**ForensiGen**

ForensiGen, LLC., P.O. Box 250, Oak Ridge, NC 27310
(919) 349-6990
mnoureddine@Forensigen.com
www.forensigen.com

July 13, 2026

**Kimberly C. Stevens**
**Senior Capital Resource Counsel**
**Federal Capital Trial Project**
**1070-1 Tunnel Road, Ste. 10-215**
**Asheville, NC 28805**

**Re: United States v. Matthew Farwell (24-cr-10259-DJC)**

Counsel,

You provided me with statements made by the prosecution in relation to the biological evidence in this case[1]. You requested my feedback about the scientific accuracy of those statements and whether they are 1) consistent with the biological evidence, 2) whether the biological evidence can confirm such statements, and 3) whether the DNA evidence provides any timeframe as to when the DNA may have been deposited on the items of evidence. Specifically, you asked whether it is acceptable for the prosecution to state that the "*defendant's DNA is on the murder weapon* [the ligature]," or "*in her* [the decedent's] *underwear*." I address those statements as follows:

1. It is an accepted fact in my field of practice that DNA evidence <u>does not</u> inform on when someone's DNA arrived on an item or the manner by which it arrived (direct contact versus secondary or higher order transfer). Therefore, it is not possible to extract this temporal information from the evidence tested in this case.

2. The assertion by the prosecutor that the defendant's DNA is on the "*murder weapon*" is quite misleading and cannot be confirmed by the biological evidence. First, male-specific Y-STR DNA evidence from the ligature revealed the presence of at least four males. Despite the exceeding complexity of that mixture, the MSP lab deduced a partial major profile through an interpretation procedure that is not validated by that lab. Even if a Y-STR profile is interpretable, it cannot distinguish between paternally related relatives. A Y-STR profile is not unique to Matthew Farwell and his paternal relatives; a Y-STR profile could have originated from a random male in the population. Second, the STR profile generated from the ligature (a mixture of four contributors) was interpreted using a probabilistic genotyping method, which is not compatible with source attribution statements (such as "*the defendant's DNA is on the murder weapon*"). In other words, it is not possible, nor is it scientifically accepted, to rely on that interpretation method to claim that the genetic

---

[1] Counsel represented to the undersigned that the prosecution made the following claims about the biological evidence in this case: "*STR testing and Y-STR testing -- yes, Y-STR testing can only test for patrilineal lines, not the case for STR Testing. And on that ligature there's one major contributor -- one: the defendant. The defendant's DNA is on the murder weapon, on part of the murder weapon used to tie her to a doorknob.*" The prosecution further claimed that the defendant's DNA is "*in multiple locations on the underwear that she was wearing when she died.*"

identity of the donor has been confirmed.  For the ~5% proportion determined by STRmix in item #2-2.3.1 (Sample of portion of ligature-Sandra Birchmore's neck), Matthew Farwell is a possible, but not a definite, contributor to the mixture.  Specifically, in my report I shed light on the fact that the statistical computations by the MSP lab for this item were based on conditioning the interpretation on the assumed presence of DNA from the decedent.  The lab should have compared Matthew Farwell to the mixture without conditioning.  I also outline in my report the implication of kinship between Matthew Farwell and Billy Farwell on this and other items tested in this case. One must evaluate STRmix results with caution especially if relatives are possible donors to the same DNA mixture.

3.    Similarly for the underpants, the evidence does not conclusively identify Matthew Farwell on the only two samples tested <u>and</u> interpreted by the lab: stain J2 (interior back crotch of underpants) and stain E (exterior back right side of underpants).

    a.  The sperm fraction from stain J2 revealed a mixture of four contributors, and there is statistical support for the hypothesis that both Matthew Farwell and Jason Pickard are contributors.  While the lab reported that spermatozoa are present on that stain, it is not possible to discern whether one or both of those males, or any of the other unidentified individuals, contributed sperm.  Testing by the lab did not confirm the presence of seminal fluid (ejaculate).  Therefore, it is not possible to rule out that this stain persisted from prior intimate interaction after this article of clothing has been laundered.  The non-sperm fraction revealed two contributors with STR analysis, with statistical support for Matthew Farwell (and excluding Jason Pickard).  Whereas, Y-STR analysis on the same sample revealed two males--this time including both Matthew Farwell and Jason Pickard.  As explained before, that testing does not identify those individuals at the exclusion of others.

    b.  The STR DNA profile from stain E (sperm fraction) was interpreted by the lab as a mixture of three contributors.  There is limited statistical support for the exclusion of the decedent.   While the lab reported that spermatozoa are present on that stain, it is not possible to discern whether one or both of those males, or the other unidentified individual, contributed sperm.  Since this mixture was interpreted using a probabilistic genotyping method, it is not possible, nor is it scientifically accepted, to claim that the genetic identity of the donors has been confirmed.   It is unknown as to when or how the DNA from each contributor arrived at that stain.

4.  In summary, the statements by the prosecution lack scientific accuracy and are potentially misleading because they do not recognize the known limitations of biological evidence, nor do such statements take into account that controversial and unvalidated interpretation methods were applied to the evidence by the MSP Lab.

Please don't hesitate to contact me should you have any further questions.

Sincerely,

**7/13/2026**

--------------------------------------------------

**Dr. Maher Noureddine, PhD, MS, D-ABC**
**President: ForensiGen, LLC.**

ForensiGen