**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ( | |
| | ( | |
| | ( | |
| v. | ( | Docket No.: 24-cr-10259-DJC |
| | ( | |
| | ( | |
| MATTHEW FARWELL | ( | |
| | ( | |

**DEFENDANT'S REPLY TO  GOVERNMENT'S NOTICE OF INTENT**
**TO INTRODUCE EXPERT TESTIMONY ON**
**THE GENERAL DYNAMICS OF "GROOMING'**

The government has noticed an intent to admit expert testimony concerning "grooming."

Gov't Disclosure, at 3.  Mr. Farwell objects to the testimony of Dr. Rocchio as a whole, as well

as to certain aspects of the proffered expert testimony, pursuant to Federal Rules of Evidence

401 and 403.  Her purported opinions are untethered to any evidence or discovery in the case.

Alternatively, Mr. Farwell requests that this Court not admit this evidence unless and until the

government builds a proper foundation, pursuant to Federal Rules of Evidence 104(b), 401, and

403.

**I.      The Proffered "Grooming" Testimony Must Be Excluded Because It Is**
**Irrelevant, Unfairly Prejudicial, and Would Not Assist the Factfinder.**

**A.  General "grooming" evidence lacks relevance under Rules 401 and 402**

Evidence is relevant if it has any tendency to make a fact more or less probable than it

would be without the evidence, and the fact is of consequence in determining the action.  Fed. R.

Evid. 401.  Relevant evidence is admissible unless the United States Constitution, a federal statute,

the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise;

irrelevant evidence is not admissible. Fed. R. Evid. 402.

Here, general evidence regarding "grooming" has nothing to do with the allegations in the case at hand and is thus irrelevant.  The government has charged the defendant with a violation of 18 U.S.C. § 1512(a)(1)(C) for allegedly killing Sandra Birchmore with, among other things, premeditation and with the intent to prevent the communication by any person to a federal law enforcement officer of information relating to the commission or possible commission of a *federal* offense, including deprivation of rights under color of law, coercion and enticement, and wire fraud.  D.E. 63, at 3.  The allegations of Count II, a violation of 18 U.S.C. § 1841, have as their predicate a violation of Count I.  *Id.*  Critically, the government has *not* charged Mr. Farwell with sex trafficking or sexual abuse, nor has it shown how any allegations of sexual abuse have a federal nexus, as is required under § 1512.  Thus, any generic evidence about "grooming" is irrelevant to the elements of the charged crimes.

By the government's own admission, Dr. Rocchio has no personal knowledge or involvement in Mr. Farwell's case.  Gov't Discl., at 2.  Her testimony will rely "on the totality of her relevant education, training, skills, knowledge, and professional experience, including her assessment and treatment of patients, forensic assessments, work and consultation with professional colleagues, continuing education, and review of relevant scientific literature in her field." *Id.*  Her anticipated testimony will generally explain what "grooming" is, and its "five stages."[1]  *Id.*, at 3.

A criminal trial is not a forum for generalized or hypothetical evidence.  *See*

---

[1] Mr. Farwell requests that this Court preclude Dr. Rocchio from testifying or answering any hypothetical questions, as the defense has not been placed on notice of any such opinions.  *See*, *States v. Middleton*, 176 F.4th 90, 97-98 (1st Cir. 2026) (noting that the District Court "barred the government from asking [the expert] any hypothetical questions because . . . the use of hypotheticals divorced from established facts tethered to this case and this victim . . . could invite speculation and it risk[ed] unduly influencing the jury's exclusive duty to determine the credibility of the witnesses") (cleaned up).

*Commonwealth v. Day*, 409 Mass. 719, 723 (1991) ("[a] criminal trial is by its very nature an individualized adjudication of a defendant's guilt or legal innocence"). Generalized evidence concerning general dynamics between "groomers" and their victims does not tend to prove that Mr. Farwell committed any of the acts alleged in the indictment. As such, it is irrelevant under Rule 401. For the same reason, the proffered testimony runs afoul of Rule 702's requirement that expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."

### B. "Grooming" evidence creates unfair prejudice that substantially outweighs its probative value under Rule 403.

The proffered testimony should be excluded not merely because it is irrelevant to the question of Mr. Farwell's guilt, but also because it amounts to highly prejudicial profiling evidence. Any alleged probative value of such evidence is substantially outweighed by its danger of unfair prejudice, confusion of the issues, and misleading the jury. With this evidence, the government seeks to taint the defendant's character through generalized "grooming" testimony in order "to suggest decision on an improper basis . . . an emotional one[,]" Fed. R. Evid. 403 advisory committee's notes on proposed rules, rather than the facts at hand.

Courts should be wary of admitting evidence allowing a jury to infer guilt because the defendant has certain characteristics in common with other defendants, particularly when that defendant *has not been charged with the same crimes as those defendants*. *See*, *e.g.*, *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990) (drug courier profile). Indeed, the First Circuit's treatment of *Simpson* in *United States v. Pires* is instructive here. *See United States v. Pires*, 138 F.4th 649, 669-71 (1st Cir.), *cert. denied*, 146 S. Ct. 253 (2025).

In *United States v. Simpson*, the defendant was charged with "unlawfully possessing a firearm, in violation of 18 U.S.C. § 922(g), and attempting to board an aircraft with a concealed

weapon, in violation of 49 U.S.C. § 1472(*l* )." 910 F.2d at155. The government sought to admit general "drug courier testimony" because "it shows that appellant meets the drug courier profile and, therefore, tends to show that he is a courier . . . [and] tends to show that appellant might have had a motive for carrying a gun." *Id.*, at 157. As the Fourth Circuit noted, "[s]imply to state this argument reveals its tenuity." *Id.* In part, this is because "proof that a person fits the profile, unsupported by evidence of drug trafficking, proves nothing . . . As the Supreme Court has noted, the profile easily fits innocent travellers as well as drug traffickers." *Id.*, *citing United States v. Sokolow,* 490 U.S. 1 (1989); *Reid v. Georgia,* 448 U.S. 438, 439–41 (1980). The Fourth Circuit held that the "*de minimis* relevance was substantially outweighed by the highly prejudicial impact that the insinuation of drug crimes had in this trial." *Id.*, at 158.

The First Circuit explained in *Pires* that the issue of admitting general "drug courier profile" testimony in *Simpson* "was not the expert testimony itself; it was how the expert testimony, standing alone, had no probative value in the absence of any supportive factual evidence." *Id.*, at 670. "The relevant issues in dispute at [the defendant's] trial were his knowing possession of a gun and his intent to board the shuttle to New York." *Pires*, 138 F.4th at 671. Consequently, "[t]he drug courier testimony had very little probative value to offer on these issues while the government made [the defendant's] status as a drug courier the centerpiece of its case." *Id.* The First Circuit concurred with the Fourth Circuit's conclusion that "the inherent risk of inflaming the jury, and of misleading it into focusing on the government's unsubstantiated and uncharged allegations of drug crimes, was unacceptably high." *Id.*, *quoting Simpson*, 910 F.2d at 157.

Mr. Farwell's case is akin to the facts in *Simpson*. Like in *Simpson,* Mr. Farwell is charged with a violation of 18 U.S.C. § 1512(a)(1)(C). Under § 1512(a)(1)(C), the Government

4

must prove (1) a killing or attempted killing, (2) committed with a particular intent; namely, an intent (a) to "prevent" a "communication" (b) about "the commission or possible commission of a federal offense" (c) to a federal "law enforcement officer or judge." *Fowler v. United States*, 563 U.S. 668, 672 (2011). None of these elements include sex trafficking or sexual abuse. Yet, the government's efforts to admit general testimony of "grooming" will make sexual abuse "the centerpiece of its case." *Pires*, 138 F.4th at 670. Therefore, this Court, like the Fourth Circuit, should find that "under these circumstances . . . the inherent risk of inflaming the jury, and of misleading it into focusing on the government's unsubstantiated and uncharged allegations" of sexual abuse is "unacceptably high[]," *see id.*, *quoting Simpson*, 910 F.2d at 157, and exclude the testimony in its entirety.

Critically, "a certain patina attaches to an expert's testimony unlike any other witness: this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve." *U.S. v. Monteiro*, 407 F.Supp.2d 351, 358 (1st Cir. 2006), *quoting United States v. Hines,* 55 F.Supp.2d 62, 64 (D. Mass. 1999). Because Dr. Rocchio's opinions bear that "patina" of expertise, a layperson jury will undoubtedly wonder why such an accomplished professional would be testifying as to "grooming" in a § 1512 case, where no sex trafficking or sexual abuse was charged.

Mr. Farwell is gravely concerned that Dr. Rocchio's "generalized" testimony may in fact touch on the evidence in his case, thus encouraging the factfinder to infer guilt merely because his case may have consistencies with sex trafficking and sexual abuse cases, which, again, are not the crimes with which he has been charged. If Dr. Rocchio's testimony is allowed, the natural, human inference would be that "grooming" must have taken place, leading the jury to make the improper inference that if Mr. Farwell is a "groomer," he must also be a person who

5

would kill another.  And these are the very types of inferences that Rule 403 was created to prevent.

The government should not be permitted to insinuate guilt because the evidence in his case may resemble the evidence in other sexual abuse prosecutions – and particularly so when Mr. Farwell *has not been charged with sexual abuse*.  In conformity with Rule 403—and in order to protect Mr. Farwell's rights to due process and a fair trial—the Court should not permit Dr. Rocchio to testify.

> **II.     The Government Must Lay a Proper Foundation Before Expert Testimony on "Grooming" Is Admissible, and the Testimony Must Be Appropriately Limited.**

Alternatively, and without conceding the position outlined **ante**, the general "grooming" testimony is at best conditionally relevant, under Rules 104(b) and 401.  Under Rule 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."  *See also* Fed. R. Evid. 401 advisory committee's notes to 1972 proposed rules (where the "probative value depends not only upon satisfying the basic requirements of relevancy . . . but also upon the existence of some matter of fact.").

For all of the reasons explained **ante**, with particular emphases on the potential Rule 403 concerns, Mr. Farwell respectfully requests that before the Court considers admission of this general "grooming" evidence, the government be required to lay a proper foundation *first*, and not to allow the evidence in "on the condition that the proof be introduced later."  *See* Fed. R. Evid. 104(b).  Because the "grooming" testimony could become the centerpiece of its case," *Pires*, 138 F.4th at 670, allowing it in *before* the government creates a sufficient foundation could create substantial and irreversible unfair prejudice against Mr. Farwell.  This would be a

bell, or rather a gong, that cannot be unrung with a jury instruction.

If the government is able to prove up a sexual abuse or statutory rape claim, before any general "grooming" testimony is admitted, the government must show the *federal* nexus of any sexual abuse claims, as is required under *Fowler.* To date, the only communication that the government references regarded conduct – theft by the decedent and, according to some versions of the story, sex with a person under the age of 16 – over which the Commonwealth of Massachusetts has sole jurisdiction. Thus, the government, without offering the required federal nexus, would seek to "transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature[.]" *Fowler*, 563 U.S. at 677.

Therefore, Mr. Farwell requests that this court require that before the government can impermissibly make "grooming" "the centerpiece of its case[,]" *Pires*, 138 F.4th at 670, it must lay a proper foundation that includes both actual facts showing sexual abuse occurred *and* the federal nexus between those facts and the elements of § 1512.

## CONCLUSION

For the foregoing reasons, and pursuant to the Federal Rules of Evidence 401 and 403, the defendant requests that this Court exclude Dr. Rocchio's testimony in its entirety, or, alternatively, that this Court require the government to show sufficient facts as to sexual abuse and federal nexus *before* allowing in Dr. Rocchio's testimony.

**Dated:** August 3, 2026

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys

*Kimberly C. Stevens*

Kimberly C. Stevens, NC State Bar # 20156
Joanne M. Daley, BBO # 653375
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Joanne_daley@fd.org
Kim_Stevens@fd.org

## CERTIFICATE OF SERVICE

I, Kimberly C. Stevens, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 3, 2026.

*Kimberly C. Stevens*

Kimberly C. Stevens

8