**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

v.

MATTHEW FARWELL,

Defendant

CRIMINAL No. 24-10259-DJC

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PROHIBIT IMPROPER CHARACTERIZATION, SPECULATION, VOUCHING, APPEALS TO EMOTION AND OTHER ISSUES**

The United States submits this filing in response to the defendant's motion in limine seeking to prohibit the government from using a number of "dehumanizing" and "name-calling" words and phrases at trial and from using or referring to certain exhibits or facts during opening that he characterizes as improper. *See* ECF No. 182. The government does not intend to use inflammatory epithets to describe the defendant or the evidence during trial, and prosecutors will abide by the applicable rules barring improper vouching and attempts at jury nullification. However, the government must discuss with the jury the crimes that the defendant committed over the course of eight years, as egregious as they were. The government must prove beyond a reasonable doubt that Matthew Farwell killed a witness or victim, Sandra Birchmore, with the intent to obstruct justice. The evidence to prove that crime involves statutory rape, child exploitation, strangling, staging a suicide, and murder, among other violent and harmful conduct. As set forth in more detail below, the Court should deny the defendant's motion insofar as it seeks to restrict the government from appropriately using and characterizing the evidence to meet its burden of proof.

## I. The Defendant's "Improper Characterization" Accusations are Unfounded

In his motion in limine, the defendant asks the Court to prohibit the government from using the following words and phrases: "staged suicide," "child rapist," "predator," "groomer," "murderer," and "any other form of name-calling." Notably, the quotes from the government's oral or written advocacy that the defendant includes in his motion show prosecutors using some of these types of words as verbs or adjectives, not as nouns. The government does not engage in gratuitous name-calling, but prosecutors must do their jobs to present and (where appropriate) argue the evidence at trial. Doing so does not infringe on the presumption of innocence. The government intends to use words and phrases that appropriately and fairly describe the evidence in order to meet its burden of proof in demonstrating that Farwell killed a witness or victim with intent to obstruct, and in so doing he also caused the death of an unborn child.

"A prosecutor is permitted to state what he believes to have been established by the evidence and to comment fairly upon it." *United States v. Martinez*, 616 F.2d 185, 187 (5th Cir. 1980). "There is no rule of evidence or ethics that forbids the prosecutor from referring to the crime by its common name . . . there is no rule requiring the prosecutor to use a euphemism for it or preface it by the word 'alleged.'" *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (finding prosecutors' remarks in opening and closing "while containing an element of righteous indignation" to be acceptable as the "law permits the prosecution considerable latitude to strike hard blows based on the evidence and all reasonable inferences therefrom.") (cleaned up). "[W]hen the prosecutor has obtained an indictment charging the defendant with a crime, and has in his opening statement told the jury that the defendant will be proved guilty of that crime, and has offered evidence that the crime did in fact occur, there is no rule of evidence or ethics that forbids the prosecutor from referring to the crime by its common name when examining a witness." *People*

*of Territory of Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) (holding that the judge would not have sustained objections to the prosecutor's use of the terms "rape" and "raped" during a trial for criminal sexual conduct and kidnapping).

The government intends to prove to the jury that, *inter alia*: Farwell murdered Birchmore and then staged it as a suicide. He used a duffle bag strap as his murder weapon. His murder caused the death of Birchmore's unborn son. Farwell killed Birchmore with the intent to prevent communication about his other crimes, which included preying on Birchmore when she was a child, grooming her, engaging in statutory rape, and coercing and enticing her. The Court should permit the government to use the above words and phrases, and others similar to them, because they appropriately describe the evidence and reasonable inferences therefrom. The defendant's arguments attempting to prohibit the phrase "staged suicide" ring especially hollow given that the defendant has consistently argued that Birchmore's death was a suicide. The government is entitled to rebut that argument, and based on the evidence and reasonable inferences therefrom in this case, "staged suicide" is a fair and appropriate characterization of the defendant's alleged conduct.

Insofar as the defendant's motion seeks to prohibit the government from fairly commenting on the evidence and reasonable inferences therefrom, using common terms, it should be denied.

A. <u>The government will not attempt to dehumanize the defendant but should be permitted to accurately describe the evidence</u>

The defendant then seeks to preclude the government from using epithets or attempting to "dehumanize or engage in zoomorphism of the defendant through rank name-calling." The government has no intention of calling the defendant an animal or engaging in "rank name-calling." This defendant, and all criminal defendants are human beings and deserve to be treated as such, especially when facing judgment by a jury of their peers. While the defendant should not be treated any worse than any other defendant, he also is not entitled to be treated any better. The

government must not be hamstrung in presenting evidence of the crimes that he committed and very real and permanent harm that he caused. As described above, the government intends to use appropriate language to describe the evidence in this case.

While the government has not, and will never, call the defendant a "predator," we do intend to present evidence and tell the jury that he, a twenty eight year old authority figure, preyed on a child when he identified her vulnerabilities, isolated her from the other members of her Police Explorer's Program, desensitized her to touch by incrementally increasing his sexual behavior with her (as evidenced by multiple text messages in which he discusses digitally penetrating her before he graduated to vaginal intercourse), and then maintained control over her. This argument is a fair one.Contrary to the defendant's assertions, stating that one person "preyed" on another is not a "gratuitous insult" and does not automatically invoke an "animalistic dichotomy" (*see* ECF No. 182 at 5). In fact, Courts regularly use the verb "prey" to describe criminal conduct. *See, e.g., United States v. Whigham*, 754 F. Supp. 2d 239, 245, 252 (D. Mass. 2010) (discussing a drug dealer who "preys on" individuals addicted to drugs); *United States v. Stover*, 93 F.3d 1379, 1387 (8th Cir. 1996) (describing how the defendants used a fraud scheme to "prey" upon certain victims); *United States v. Stover*, 93 F.3d 1379, 1383 (8th Cir. 1996) (discussing how the "defendants preyed on" elderly victims). Further, in amending 18 U.S.C. § 2422(b) (one of the statutes underlying the defendant's alleged obstruction here) in 1988, the House Judiciary Committee confirmed its intent to enact "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computers ... by providing law enforcement with the tools it needs to investigate and bring to justice those individuals who ***prey on*** our nation's children." H.R. Rep. 105-557, 10, 21, 1998 U.S.C.C.A.N. 678, 678–79, 690 (June 3, 1998) (emphasis added).

To the extent the defendant's motion seeks to prevent the government from using the verb "preyed" to describe the defendant's conduct, or any other fair comment on the evidence using common terms, it should be denied.

B. Sandra Birchmore is the victim in this case

The defendant seeks to preclude the government from calling Birchmore a victim. The Court should deny this request. The defendant cites no federal authority to support his request to preclude use of the word victim in connection with Birchmore. Indeed, the federal courts that have addressed this issue generally hold that, unless the charged crime is a victimless crime (which murder is not) using the word "victim" is permissible and appropriate. *See, e.g., United States v. Granbois*, 119 F. App'x 35, 38–39 (9th Cir. 2004) (rejecting defendant's contention that the trial court's use of the term "victim" in the elements instruction to the jury undermined the presumption of innocence, because the court otherwise made it clear that "the government must prove each of the ... elements beyond a reasonable doubt"); *People of Territory v. Guam*, 14 F.3d 1344, 1348 (9th Cir. 1994) (holding that the lower court's instruction that "[a] victim is defined or means the person whom the defendant allegedly subjected to criminal sexual conduct" was "an adequate safeguard against any potential prejudice that might conceivably flow from the use of the word 'victim'")

While the defendant may claim that he did not commit crimes, the government is entitled to its view of the evidence. The term "victim" accurately reflects Birchmore's status under the Crime Victims' Rights Act, 18 U.S.C. § 3771(e)(2)(A), which defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." Further, Farwell is charged with killing a witness or *victim* in violation of 18 U.S.C. § 1512(a)(1)(C) (emphasis added). ECF No. 63. The title of section 1512 is "Tampering with a

Witness, Victim, or Informant." Given that the word "victim" appears in the title of the statute and in the heading of the Superseding Indictment, there is no basis to preclude the government from using the term "victim." The government has to prove a murder. Birchmore was the victim of that murder.

The government will also present evidence that Birchmore was a victim of Farwell's coercion and enticement and deprivation of rights under color of law, two of the federal crimes underlying his obstruction charge. Indeed, in a text message the government anticipates introducing at trial, Birchmore used the term "victim" to describe herself in connection with Farwell's conduct.

The Court should deny Farwell's request to prohibit the government from referring to Birchmore as the victim.

## II. The Government Will Present Evidence of Birchmore's Last Day of Life and Farwell's Involvement in that Day, but Will Not Purport to Recreate her Last Thoughts and Feelings

The defendant next seeks to prevent the government from "recreat[ing] the deceased victim's thoughts and feelings as the alleged crime unfolded." While the government will not attempt to elicit testimony about what Birchmore was thinking or feeling when Farwell allegedly strangled her, the government does intend to present evidence about Birchmore's activities on the day she was killed. This evidence includes but is not limited to electronic evidence of Birchmore's text messages and other communications, internet searches, and social media viewing. It also includes surveillance video showing Birchmore entering and exiting her apartment building multiple times. *See* ECF No. 179 at 16-17. The government will argue fair inferences from that evidence, such as: Birchmore did not expect Farwell to strangle her to death when he visited her apartment on February 1, 2021.

The defendant is wrong in asserting that there "is a complete absence of evidence here about the final moments of Ms. Birchmore's life." ECF No. 182 at 7. Among other things, the government has multiple sources of evidence confirming Farwell's presence in Birchmore's apartment during her last moments of life, evidence about when her phone locked and took its last steps, and forensic evidence about how she died.

The government does not intend to introduce an "imaginary script" or "speculate" about what Birchmore may have said, orally, to others on her last day of life, but the government will properly admit testimony from others about what Birchmore actually did say that day, to the extent permitted by the Federal Rules of Evidence and this Court. Further, the government may introduce, where admissible, Birchmore's written communications and other electronic activities of February 1, 2021. This evidence is also appropriate for opening statement or closing argument. To the extent the defendant's motion seeks to preclude the government from introducing or discussing admissible evidence related to Birchmore's last day of life, it should be denied.

## III. The Government Should Not be Prohibited from Using Evidence of Farwell's Visit to Birchmore's Apartment on February 1, 2021

The Court should also deny the defendant's request to prohibit the government from using the surveillance video (or still photos of the video) showing Farwell entering Birchmore's apartment building on February 1, 2021, the day she died. First, multiple witnesses have identified the defendant as the person in the video, and the defendant himself admitted to State Police investigators that he visited Birchmore that night. Second, multiple experts have verified the extent to which the video's timestamp was off, and all of those reports have been provided to the defendant. *See, e.g.,* ECF No. 179 at 36-37 (discussing how the government's expert Jessica Hyde calculated that the video timestamp was approximately 13 minutes to 13 minutes and 30 seconds ahead of the actual time). Third, text messages between Farwell and Birchmore that day show him

asking to "come by for a second" and Birchmore responding affirmatively. Approximately seven minutes after asking if he could visit, Farwell is seen in the surveillance video at the main door to Birchmore's apartment complex.

The defendant did not move, *in limine*, to exclude the surveillance video, likely because there is no legal basis to do so. The defendant will be permitted to cross-examine witnesses who identified him in the video. He can also cross-examine Hyde as to her calculation regarding the timestamp's offset. He could have sought his own digital forensic expert opinion regarding the video's timestamp. But asking the Court to prevent the government from using admissible evidence in its opening statement that happens to be inculpatory is not an appropriate or permissible remedy.[1]

For these reasons, the Court should deny the defendant's request to prohibit the use of video in opening statements.

### IV. The Government May Contrast the Federal Investigation with the State Investigation into Birchmore's Death as Such Argument Does Not Constitute Vouching

The defendant asks the Court to prohibit the government from "vouching" for the federal investigation into Birchmore's death that led to the homicide charges in this case. The government will not engage in vouching but instead will appropriately argue the evidence and reasonable inferences therefrom to show that Farwell is guilty. In this case, that argument must properly include information about the federal investigation that concluded that Birchmore's death was a homicide and that Farwell killed her, because the state conducted an investigation into Birchmore's

---

[1] The defendant seeks to prohibit the use of any video or audio evidence in opening statements, but discusses only the surveillance video in his motion. The government notes that there is no blanket rule prohibiting the use of video or audio evidence in opening statements, nor should this Court choose to impose one here.

death that led to the opposite conclusion – that she died by suicide. In this case, defense counsel has already vouched for the state investigation into Birchmore's death, characterizing it as "lengthy" (ECF No. 106 at 1, 9) and one that involved "intense scrutiny" (*id*. at 9). The government expects the defendant to continue to credit the state investigation and its conclusion at trial.

The government is permitted to rebut this characterization by discussing the scope of the federal investigation. In order to demonstrate that the state investigation was incorrect in its conclusion, the government intends to present evidence that federal investigators took steps that state investigators did not take. The government will not use the term "we" to describe the federal investigation nor vouch for FBI agents in a way that bolsters witnesses' credibility based on FBI agents' work. However, given that the state and federal investigations came to opposite conclusions about Birchmore's death, the government will need to explain to the jury how the federal investigation was different from the state investigation. The government will use the evidence and reasonable inferences therefrom to make arguments about why the jury should find the defendant guilty. The government will do so while heeding the cautionary guidance of *United States v. Canty*, 37 F.4th 775, 789 (1st Cir. 2022).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Torey B. Cummings*
BRIAN A. FOGERTY
ELIZABETH C. RILEY
TOREY B. CUMMINGS
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney

Date: August 17, 2026