**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW FARWELL,<br><br>Defendant | CRIMINAL No. 24-10259-DJC |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS SEEKING TO EXCLUDE TESTIMONY REGARDING BIRCHMORE'S CAUSE OF DEATH**

The United States submits this opposition to two of the defendant's motions in limine seeking to prevent Sandra Birchmore's treatment providers and other witnesses from testifying about their reactions to learning that Birchmore had allegedly committed suicide. *See* ECF Nos. 192, 193. The government anticipates that these treatment providers and other witnesses will testify, in sum and substance, that they were surprised by reports that Birchmore had committed suicide because in their interactions with Birchmore, there were no indications she was suicidal.

As set forth below, the Court should permit these witnesses to testify as to their state of mind upon learning that Birchmore had committed suicide, as this is relevant and admissible non-opinion testimony.

**Background**

The government provided notice to the defendant under Fed. R. Crim. P. 16(a)(1)(G) that it may call both Diala Alkhalil and Dr. Priyanka Venkataraman as hybrid expert and fact witnesses. Alkhalil is a licensed mental health counselor who treated Birchmore from approximately 2007 or 2008 to 2011 and from November 2016 to Birchmore's death in February 2021. In its expert notice, the government set forth Alkhalil's anticipated opinions based on her specialized training and experience. Alkhalil's anticipated testimony includes, but is not limited to, assessment and

diagnosis of patients, suicide and suicidal ideation, and her treatment of Birchmore specifically. As disclosed in the notice, the government anticipates that Alkhalil will testify, *inter alia*, that when a counselor determines that a patient is actually at risk of suicide, the counselor would typically recommend to the patient that she go to the hospital for a mental health assessment. Alkhalil will testify that she screened Birchmore for suicidal ideation during each therapy session, which she had once or sometimes twice per week in late 2020-early 2021, and at no point did Birchmore express signs of suicidal ideation or harming herself. Alkhalil will also testify that on January 31, 2021, she observed Birchmore to be happier than she had been in some time, excited to be a parent and hopeful for the future. Alkhalil has stated that she was "shocked" when she heard, a few days after Birchmore's death, that Birchmore had allegedly committed suicide. Reports of Alkhalil's statements about that reaction have been produced to the defendant.

Venkataraman is an obstetrician-gynecologist who treated Birchmore from at least December 2019 through her death in February 2021. In its expert notice, the government set forth Venkataraman's anticipated opinions based on her specialized training and experience. Venkataraman's anticipated testimony includes, but is not limited to, pre-conception counseling, mental health and pregnancy, and her treatment of Birchmore. As disclosed in the notice, the government anticipates that Venkataraman will testify, *inter alia*, if a patient were to voice having thoughts of harming themselves, she would send them for an inpatient mental health evaluation. She will further testify that in the course of treating Birchmore, she gave Birchmore a mental health assessment on January 21, 2021, and that Birchmore scored zero on the only question related to self-harm and suicidal ideation. Venkataraman will further testify that she prescribed Sertraline (Zoloft) to Birchmore. Venkataraman has stated, in reports produced to the defendant, that she was surprised when she heard of Birchmore's alleged suicide.

Multiple witnesses have disclosed to the government, in reports produced to the defendant, that they were surprised to learn that Birchmore had allegedly committed suicide. These witnesses explained, in sum and substance, that they felt surprised because suicide was inconsistent with their personal experiences with Birchmore around the time of her death. The witnesses disclosed that, around that time, they generally observed Birchmore to be happy, planning for her future, and very excited about having a baby. Many of these witnesses were so shocked and disbelieving about Birchmore's suicide that they reached out to the Norfolk County District Attorney's Office and State Police to urge them to investigate this case as a homicide.

The defendant has asked the Court to preclude all of these witnesses from testifying regarding their surprise or disbelief over Birchmore's death, arguing such testimony is not relevant, unfairly prejudicial, confusing, or misleading. ECF Nos. 192, 193.

**Argument**

The Court should deny defendant's motions seeking to preclude witnesses from testifying about their reactions to learning of Birchmore's alleged suicide. The defendant mischaracterizes this testimony as "opinion testimony." It is not. Testimony about feeling surprised or shock that Birchmore allegedly committed suicide is not an opinion, it is testimony about the contents of witnesses' own minds, which explains other actions they took. *See Rodrique v. Hearst Communications, Inc.*, 126 F.4th 85, 93 (1st Cir. 2025) ("testimony about a witness's belief was not opinion testimony when offered to prove the witness's reason for behaving in accordance with that belief.") (internal citation omitted); *United States v. Morton*, 391 F.3d 274, 277 (D.C. Cir. 2004) ("A witness's testimony about his own state of mind is not opinion testimony."); *United States v. Iotova*, No. 23-129-CR, 2024 WL 5198747, at *2 (2d Cir. Dec. 23, 2024) (holding that

testimony by witnesses that "described [their own] state of mind concerning their experiences" was properly admitted as non-opinion testimony).

With respect to Alkhalil and Venkataraman, testimony that they were shocked or surprised that Birchmore allegedly committed suicide provides support and corroboration that they acted reasonably when they provided professional care to Birchmore. As set forth in their respective expert disclosures, had Alkhalil or Venkataraman understood Birchmore to have been suicidal in January 2021, they would have treated Birchmore differently, including potentially referring her for an assessment at a hospital or for inpatient treatment. Alkhalil and Venkataraman's testimony about their reactions to Birchmore's alleged suicide is relevant to corroborate their perceptions and understanding of their interactions with Birchmore in December and January 2021, and their respective treatment decisions during Birchmore's last few weeks of life.

Similarly, testimony from percipient lay witnesses with whom Birchmore interacted during her last weeks of life that they were surprised or shocked by Birchmore's alleged suicide is not opinion testimony. It is admissible and relevant to show these witnesses' states of mind concerning their individual experiences with Birchmore. It will corroborate their experiences with Birchmore when she was alive, and it informed actions that each of these witnesses took in response to learning that Birchmore had allegedly committed suicide. For example, some of these witnesses affirmatively contacted the state police to share information about their recent observations of Birchmore.

Testimony that these witnesses were so shocked that they called investigative agencies and urged them to investigate the case as a homicide is also highly probative. In its filings and oral advocacy, the defense has relied heavily on the fact that the initial investigators deemed Birchmore's death to be a suicide. But most of the witnesses that the state police interviewed were

individuals who affirmatively contacted the state police themselves. These witnesses did so to provide percipient information that contradicted or undermined the state police's conclusion that Birchmore committed suicide. Because they were surprised by and questioned reports that Birchmore took her own life, these witnesses urged the state police to consider whether her death was a homicide.

The government does not intend to elicit testimony from Alkhalil, Venkataraman, or any lay witness about their opinions about whether they believe Birchmore actually committed suicide. As set forth above, these witnesses' reactions to hearing reports that Birchmore allegedly did so is not opinion testimony and therefore does not fall under Rules 701 or 702 of the Federal Rules of Evidence.

The probative value of these witnesses' testimony that they were surprised about Birchmore's alleged suicide is not substantially outweighed by a risk of unfair prejudice, confusing the issues, or misleading the jury and is therefore not barred by Rule 403. With respect to Alkhalil and Venkataraman, defendant argues that the risk of unfair prejudice is heightened by the fact that they are hybrid expert/fact witnesses. However, the government does not intend to use the term "expert" in connection with either of these witnesses at trial. Alkhalil and Venkataraman are percipient fact witnesses who happen to be experts in their fields and who encountered Birchmore in their professional capacities. As such, the jury will understand that they were not chosen for their expertise but instead because they had involvement with the victim. This fact decreases the risk of unfair prejudice or jury confusion. Further, the defendant will be permitted to cross-examine these witnesses on whether suicide is predictable, as discussed in studies or articles the defendant cites in his motion, ECF 192 at 5-6, should he wish to do so. As stated above, this state-of-mind testimony as to Alkhalil and Venkataraman's surprise at Birchmore's alleged suicide has

significant probative value in corroborating and explaining their interactions with Birchmore and the courses of treatment they chose. It is not substantially outweighed by any Rule 403 concerns. As set forth above, the probative value of lay witnesses' state-of-mind testimony is high. It relates to their percipient experiences with Birchmore and the witnesses' actions upon hearing reports that she took her own life, including some who contacted the state police to urge them to investigate the death as a homicide. This high probative value is not substantially outweighed by a risk of unfair prejudice, or any other Rule 403 concern.

The Court should deny defendant's motions (ECF Nos. 192 and 193) seeking to preclude Alkhalil, Venkataraman, and other lay witnesses from testifying that they were surprised when they learned that Birchmore had allegedly committed suicide.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Torey B. Cummings*
BRIAN A. FOGERTY
ELIZABETH C. RILEY
TOREY B. CUMMINGS
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney

Date: August 17, 2026