**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW FARWELL,<br><br>Defendant | CRIMINAL No. 24-10259-DJC |

**UNITED STATES' OPPOSITION TO DEFENDANT'S REQUEST TO EXCLUDE OR LIMIT EXPERT TESTIMONY CONCERNING "GROOMING"**

The United States submits this opposition to the defendant's request to exclude or limit the testimony of expert Dr. Lisa Rocchio (*see* ECF No. 188), a clinical and forensic psychologist who specializes in the assessment and treatment of interpersonal violence and traumatic stress. Dr. Rocchio's anticipated testimony is relevant to Farwell's alleged coercion and enticement of Sandra Birchmore when she was a child, which directly relates to an element of the obstruction charge. Her testimony will also assist the jury understanding the relational dynamic between Farwell and Birchmore over time and ultimately how Farwell was able to gain access to Birchmore to kill her with a duffle bag strap. The significant probative value of Dr. Rocchio's testimony is not substantially outweighed by a risk of unfair prejudice. For these reasons, detailed below, the Court should deny the defendant's motion.

**Background**

The superseding indictment alleges, *inter alia*, that on or about February 1, 2021, Farwell killed Sandra Birchmore with malice aforethought and with the intent to prevent her communication to law enforcement of information relating to the commission or possible commission of the federal offenses of Deprivation of Rights Under Color of Law (in violation of

18 U.S.C. § 242), Coercion and Enticement (in violation of 18 U.S.C. § 2422(b)), and Wire Fraud, (in violation of 18 U.S.C. § 1343), all in violation of 18 U.S.C. § 1512(a)(1)(C). For Count One, the government must prove beyond a reasonable doubt: First, on or about February 1, 2021, the defendant killed Sandra Birchmore with malice aforethought, willfully, deliberately, maliciously, and with premeditation; and second, that the defendant did so with the intent to prevent a communication about the commission or possible commission of a federal offense, to wit, Deprivation of Rights Under Color of Law, Coercion and Enticement, or Wire Fraud, to a federal law enforcement officer.

The government intends to introduce at trial evidence showing that Farwell coerced and enticed Birchmore when she was a child and that he did so under color of law, contributing to his motivation and intent to obstruct justice by killing her. Specifically, the government will introduce evidence showing that, among other things, when he was a police officer and Birchmore was a child, Farwell coerced and enticed Birchmore, engaging in sexual activity with her before she was old enough to consent. Farwell met Birchmore after her mother enrolled her in the Stoughton Police Explorer's Program to help her establish structure and interact with role models. Birchmore's mother was a single parent facing significant health issues; she died shortly after Birchmore turned 18 years old. Farwell began grooming Birchmore for sexual exploitation first by friending her on Facebook and "tutoring" her at the local library when she was 15 years old.[1] Farwell developed a seemingly platonic relationship with her, then a sexual relationship that included boundary-testing acts like touching and digital penetration, and then he engaged in sexual

[1] Farwell and Birchmore's text messages as well as Birchmore's contemporaneous medical records from 2013 corroborate this fact.

intercourse with Birchmore, taking her virginity when she was 15 and he was a 27-year-old police officer.

As Birchmore reached the age of 16, Farwell continued to exploit their unequal power dynamic to control her.[2] He sought to track Birchmore's location through her cell phone, confronting her on multiple occasions through text message when she disabled that function. Farwell also asked Birchmore to participate in rape fantasies, incest fantasies, and underage sex fantasies. Their relational dynamic included the concept of sex as punishment, anal sex, and choking. Between 2019 and 2021, there are no fewer than twenty text messages from Farwell to Birchmore in which Farwell references and glorifies the act of choking Birchmore.

On May 1, 2026, the government provided notice of its intent to call Dr. Rocchio as an expert at trial. The government's trial brief includes a summary of Dr. Rocchio's opinions. ECF No. 179 at 39-46. As described in the notice, Dr. Rocchio is a "blind expert." She never met or treated Birchmore, and she has not reviewed any of the discovery in this case nor interviewed any of the potential witnesses. Her anticipated testimony focuses on the concept of grooming, a series of deceptive tactics, strategies, or modus operandi that are used by perpetrators for the purpose of sexually abusing a child. This includes, but is not limited to, how perpetrators of sexual abuse select victims with vulnerabilities and how they build and maintain trust and attachment. Dr. Rocchio will also testify about the impact of grooming and sexual abuse on young victims, and the labeling and disclosure of such abuse. *Id*.

---

[2] Massachusetts has since passed legislation that would have rendered Farwell's conduct from 2013-2015 (when Birchmore was 16 and 17 years old) illegal, given Farwell's significant age difference and position of power and trust as a police office.

## Argument

Dr. Rocchio's testimony is relevant to the federal crimes underlying the Section 1512 charge, as the jury will need to understand the nature and extent of the crimes Farwell sought to obstruct. Dr. Rocchio's testimony is highly probative in helping the jury understand how Farwell was able to create and maintain the relational dynamic he fostered with Birchmore, and ultimately how he was able to put a ligature around her neck to strangle and kill her. The probative value of this testimony is not outweighed by a risk of unfair prejudice, particularly given Dr. Rocchio's status as a blind expert with no access to the victim, the evidence, or the witnesses in this case. Finally, there is no requirement that the government lay a foundation before offering Dr. Rocchio's testimony.

### I. Dr. Rocchio's Testimony is Relevant

Dr. Rocchio's testimony on grooming is relevant to two of the federal crimes underlying Farwell's obstruction of justice: Farwell's coercion and enticement of Birchmore as a minor and his deprivation of her rights under color of law. In order to carry its burden on the second element of Section 1512(a)(1)(C) (the defendant killed with the intent to prevent a communication about the commission or possible commission of a federal offense to a federal law enforcement officer), the government intends to present evidence that the defendant committed certain underlying federal crimes about which he intended to prevent communication, including but not limited to violations of Sections 2422(b) and 242.

The government will therefore present evidence that Farwell, while he was a police officer working in the Stoughton Police Explorers Program, sexually abused Birchmore when she was a child. He engaged in sex acts with her when she was under age 16 and had sexual intercourse with her in 2013 when she was 15 years old. The government will introduce evidence that at times

Farwell sought to track Birchmore's location through her cell phone and would become angry when she disabled that function. Farwell also introduced to Birchmore the concepts of sex as a punishment, rape fantasies, and choking. Despite Farwell's conduct, Birchmore's text messages express, at times in 2019 and 2020, a willingness to engage in some of this conduct with him. And throughout the eight years Farwell was engaging in these behaviors with Birchmore, she remained strongly attached to him, regularly telling him she loved him and often calling him her "best friend."

Dr. Rocchio will assist the jury in understanding how the defendant, using his position of trust as a police officer, was able to coerce and entice (in other words, groom) Birchmore for sex when she was a child, and how he kept his control over her to maintain their relational dynamic as she grew up. The concept of grooming is not within the general knowledge of a typical juror. Dr. Rocchio's testimony will help the jury understand how it was that Birchmore could have been exploited as a child and why this went unreported for years.

Dr. Rocchio's testimony will also help the jury understand why Birchmore may have appeared to be a willing participant in Farwell's sexual degradation. Farwell has noted in multiple filings that Birchmore engaged in a consensual sexual relationship with the defendant. Dr. Rocchio's testimony will help the jury understand why, after being the victim of criminal sexual contact as a child, Birchmore would consent to having sex with the defendant when she was an adult.

Next, Dr. Rocchio's testimony will help rebut Farwell's inevitable attacks on Birchmore's sexual history. Dr. Rocchio's testimony will help the jury understand how Birchmore became attached to a relationship that had harmed her, and how the defendant, by sexually abusing her, gave her a distorted sense of "normal" sexual behavior, which she then, understandably, initiated

with others. Without such testimony, the jury may be left with the impression that despite the fact that the defendant conditioned Birchmore to believe that sex should involve abuse, rape, degradation, choking, and punishment, that she was promiscuous for having discussed these concepts with her subsequent partners. This testimony will help the jury understand that Birchmore's relationships had nothing to do with promiscuity and everything to do with her years of victimization.

Dr. Rocchio's testimony will also help the jury to understand how Farwell gained access to Birchmore to kill her. Dr. Rocchio's testimony will provide context for Farwell's history of choking Birchmore, which normalized the behavior and left her unsuspecting on February 1, 2021. Based on Farwell's pretrial filings, it is clear that the alleged lack of defensive wounds on Birchmore's neck is a centerpiece of his trial defense. Dr. Rocchio's testimony will help the jury understand how Birchmore came to consent to having the defendant choke her during sex and why she trusted him during intercourse. Her trust had been cultivated by the defendant for years.

Dr. Rocchio's testimony is relevant because it will assist the jury. *See, e.g., United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) (explaining expert testimony is relevant where it "concern[s] matters that the average juror is not capable of understanding on his or her own."). Courts have specifically and repeatedly authorized expert testimony on the subject of grooming. *See, e.g., United States v. Pires*, 138 F.4th 649, 667-69 (1st Cir. 2025) (affirming admission of blind expert testimony on "typical-patterns-and-dynamics" of recruiting and trafficking a child for sex); *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995) (affirming admission of a sexual abuse specialist who testified about general behavior of abuse victims); *United States v. Telles*, 6 F.4th 1086, 1097-1098 (9th Cir. 2021) (holding that admission of expert testimony on grooming did not violate Federal Rules of Evidence 702 or 403 nor violate due process); *United States v.*

*Isabella*, 918 F.3d 816, 833 n.15 (10th Cir. 2019) ("Grooming can be established by use of an expert witness who testifies about psychological tactics that are common in cases of child sex abuse."); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (affirming expert testimony on the "grooming process"); *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (finding expert testimony "was helpful to the jury in understanding how child molesters operate—something with which most jurors would have little experience.").

Rocchio's testimony will also provide the jurors with an insight into Farwell's motive. The defendant successfully controlled Birchmore for years. It was only once the power dynamics shifted and he started to lose that control did he need to kill her. The defendant did not kill Birchmore because he had extramarital sex with her. He killed her because he raped her, and after years of grooming her not to disclose, she had reached an age of adulthood and displayed a newfound independence and confidence after learning that she was pregnant.

Finally, notwithstanding Farwell's motion, expert testimony about general principles is appropriately admissible. *See* Fed. R. Evid. 702 Advisory Committee note ("[I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.").[3]

[3] In his motion, the defendant also seeks to bar Dr. Rocchio from answering hypothetical questions, citing one First Circuit case that simply noted, in a recitation of procedural background, that a trial court held that hypothetical questions to an expert were inappropriate based on the specific facts and circumstances of that case, a decision that went unchallenged on appeal. ECF No. 188 at 2, n.1. However, "[a] long tradition in American courts permits an expert to testify in the form of a 'hypothetical question,' where the expert assumes the truth of factual predicates and then offers testimony based on those assumptions." *Williams v. Illinois*, 567 U.S. 50 (2012) (abrogated on other grounds by *Smith v. Arizona*, 602 U.S. 779 (2024)). Of course, any hypothetical questions must be based on opinions previously disclosed to the other party.

Dr. Rocchio will provide reliable opinions about principles of coercion and attachment in abusive relationships that will help the jury understand the psychological factors underlying the relational dynamic between Farwell and Birchmore.

**II. The Probative Value of Dr. Rocchio's Testimony is Not Substantially Outweighed by the Risk of Unfair Prejudice**

Given the nature of the subject matter that Dr Rocchio will explain to the jury and how it will help the jury understand the evidence, Dr. Rocchio's testimony is highly probative. Any alleged risk of unfair prejudice does not outweigh the probative value of Dr. Rocchio's testimony, let alone "substantially" outweigh it. The Court should decline the defendant's request to exclude Dr. Rocchio's testimony under Rule 403.

Farwell argues that the Court should exclude Dr. Rocchio's testimony because the defendant is not charged with committing violations of 18 U.S.C. §§ 2422(b) or 242. The defendant ignores the fact that evidence of underlying crimes the defendant sought to obstruct is an element of Section 1512(a)(1)(C). In addition, the cases that defendant cites in support of this argument (*see* ECF No. 188 at 3-5) are distinguishable. *See United States v. Simpson*, 910 F.2d 154 (4th Cir. 1990) and *United States v. Pires*, 138 F.4th 649 (1st Cir. 2025). Neither *Simpson* nor *Pires* involved Section 1512 or any other charge that required a showing of intent to prevent a communication about another crime or crimes. Instead, *Simpson* involved a straightforward charge of attempting to board an airplane with an unlawful firearm. At trial, the government called an FBI expert to testify that the defendant met a "drug courier profile" because, among other things, he was a Jamaican citizen, he was carrying a large amount of cash, and marijuana residue was found in his jacket. *Simpson*, 910 F.2d at 158. The Fourth Circuit held that the court abused its discretion in admitting this expert testimony under Rule 403, because there was no other evidence "linking the defendant to the drug trade" *id*. at 157, and because "the relevant issues in dispute at [the

defendant's] trial were his knowing possession of a gun and his intent to board the [plane]." *Id*. at 158. In *Pires*, the First Circuit simply cited and quoted the *Simpson* holdings to distinguish them from Pires' arguments on appeal. *Pires*, 138 F.4th at 670.

*Simpson's* holding (echoed by the First Circuit) is that that expert testimony about an uncharged crime that is unrelated to the charged crime and for which there is no other factual evidence should generally be excluded under Rule 403. *Simpson*, 910 F.2d 154. But in this case, the relevant issues that will be in dispute include not only whether Farwell committed the charged crimes, but whether he committed or possibly committed the three crimes underlying his alleged obstruction, which goes to the second element of proving a violation of Section 1512(a)(1)(C). And, as described in the government's Trial Brief (ECF No. 179), there is ample evidence of Farwell's coercion and enticement of Birchmore and deprivation of rights under color of law. Therefore, Dr. Rocchio's expert testimony, which will help the jury understand these two underlying crimes, is unlike the expert's testimony in *Simpson* because it is probative of "topics directly at issue in the trial." *Pires*, 138 F.4th at 670. Even so, Dr. Rocchio's testimony will not be "the centerpiece of" the government's case (*see* ECF No. 188 at 5, quoting *Pires*), given that she is one of approximately 50 government witnesses, including 11 other experts. *See* ECF No. 179.

Just because some of Dr. Rocchio's proposed testimony is appropriately prejudicial does not mean that it should be excluded under Rule 403. *See supra* at 6-7 (citing cases allowing expert testimony on grooming, many involving Rule 403 analyses). Dr. Rocchio's opinions will assist the trier of fact in understanding the other evidence at trial. The risk of unfair prejudice is mitigated by the fact that Dr. Rocchio is a blind expert who never met the victim or any witnesses and who is unfamiliar with the evidence. She will not comment on specific qualities of

Birchmore or the defendant. The high probative value of this testimony is not substantially outweighed by a risk of unfair prejudice.

### III. The Government Is Not Required to Prove the Crimes Underlying Farwell's Obstruction

In his motion, Farwell asks the Court to require that the government to lay a foundation showing that Farwell sexually abused Birchmore or engaged in statutory rape of her prior to allowing Dr. Rocchio to testify. The Court should deny this request as it has no basis in the law. Section 1512(a)(1)(C) requires the government to prove obstruction beyond a reasonable doubt; the government is not required to prove beyond a reasonable doubt that Farwell committed the underlying Section 2422(b), 242 or 1343 crimes. Instead, the government must establish the second element of the Section 1512(a)(1)(C) charge – that the defendant killed with the intent to prevent a communication *about the commission or possible commission of a federal offense* to a federal law enforcement officer. In order to satisfy this element, the government will present evidence about the defendant's commission or possible commission of three federal offenses, and Dr. Rocchio's testimony is directly relevant to assisting the jury in understanding the evidence around that element. That said, Dr. Rocchio will not be the government's first witness and the jury will receive evidence of Farwell's grooming prior to Dr. Rocchio taking the stand.

* * *

## Conclusion

For the reasons set forth herein, the Court should deny the defendant's motion seeking to exclude Dr. Rocchio's testimony and decline to require the government to lay a foundation prior to her testifying, as neither request is supported by the law. Dr. Rocchio's testimony is relevant and highly probative in helping the jury understand the second element of the obstruction charge. Its probative value is not substantially outweighed by a risk of unfair prejudice, and therefore it should be admitted.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: *<u>/s/ Torey B. Cummings</u>*
BRIAN A. FOGERTY
ELIZABETH C. RILEY
TOREY B. CUMMINGS
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney

Date: August 17, 2026