**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No. 1:24-cr-10259-DJC |
| | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**MOTION IN LIMINE TO PRECLUDE GOVERNMENT FROM PRESENTING FBI AUDIO NARRATION OF TEXT MESSAGES TO THE JURY**

Now comes the defendant Matthew Farwell and moves this Honorable Court in *limine* to preclude the government from playing for the jury a self-published audio narration of the relevant written communications in this case.

**The Government's Plan**

In its 48-page Trial Brief (D.E.179), the government announced, at pages 47- 48, its intent to create audio recordings of text messages between defendant Matthew Farwell and decedent Sandra Birchmore with FBI agents as voiceover actors.

Instead of allowing the jurors to read these written messages themselves, the government plans to enlist FBI agents to audio record these written communications and then premiere them at trial.

**LEGAL AUTHORITY AND RELEVANT COMMENTARY**

It is unnecessary and prejudicial for the government to attempt to introduce a dramatic reading of various text messages in this case. First, jurors who are qualified must be able to read, write and understand the English language:

> **28 U.S.C.A § 1865. Qualifications for jury service**
>
> (b) In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, or the clerk if the court's jury selection plan

so provides, shall deem any person qualified to serve on grand and petit juries in the district court unless he—

(2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;

Second, a dramatic reading of the text messages does nothing to aid the jury in understanding the evidence:

Effective December 1, 2024, FRE 107 explicitly codifies the rules for Illustrative Aids:

The second category—the category covered by this rule—is information offered for the narrow purpose of helping the trier of fact to understand what is being communicated to them by the witness or party presenting evidence or argument. Examples may include drawings, photos, diagrams, video depictions, charts, graphs, and computer simulations. These kinds of presentations, referred to in this rule as "illustrative aids," have also been described as "pedagogical devices" and sometimes (and less helpfully) "demonstrative presentations"—that latter term being unhelpful because the purpose for presenting the information is not to "demonstrate" how an event occurred but rather to help the trier of fact understand evidence or argument that is being or has been presented.

Against that beneficial effect, the court must weigh most of the dangers that courts take into account in balancing evidence offered to prove a fact under Rule 403--**one particular problem being that the illustrative aid might appear to be substantive evidence of a disputed event**. If those dangers substantially outweigh the value of the aid in assisting the trier of fact, the trial court should prohibit the use of--or order the modification of--the illustrative aid. And if the court does allow the aid to be presented at a jury trial, the adverse party may ask to have the jury instructed about the limited purpose for which the illustrative aid may be used. *Cf.* Rule 105. (Emphasis supplied).

- FRE 107, Committee Notes on Rules—2024
-

Despite these clear provisions, in support of this plan, the government cites Rule 107 of the Federal Rules of Evidence (FRE) which states that the "court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time."

The government also cites *United States v. López-López*, 282 F.3d 1, 15-16 (1st Cir. 2002) and states correctly that the Court has broad discretion in admitting demonstrative evidence.

In *Lopez-Lopez*, a drug case, the defendants objected to the district court's sua sponte order requesting the prosecution to demonstrate the use of a spotlight — one of the two used on the police boat on the night of the arrests — in the courtroom.

> The light was turned on for a period approximating the two to three second period during which agents Velez and Rivera testified they witnessed Luciano on the night the speed boat was apprehended. Furthermore, the light was flashed only in the corner of the courtroom, not on any of the appellants.
>
> This demonstration was highly relevant. It went to the credibility of critical testimony in the case: the testimony of agents Velez and Rivera, who claimed to have seen Luciano piloting the speed boat. There was no error. *Id* at 16.

The government next cites *United States v. Anderson*, 452 F.3d 66 (1st Cir. 2006), in support of their proposed creative endeavor. In *Anderson*, the government introduced into evidence a tape containing the conversations from an electronic transmitting device worn by a cooperator during the narcotics operation at issue at the trial. As is often the case with these kinds of surreptitious recordings, there were issues with the sound quality. Before trial, the government filed a motion in limine[1] requesting that the district court rule on whether the jury would be allowed to view a transcript of the recording. The government argued that it would be permissible for the transcript to be used as an aid to the jury while the actual tape was being played. The defense argued that the transcription was inaccurate, that it was not notarized, that the date was incorrect, and that there was no indication on the transcript as to who prepared it.

Having listened to the tape, the Court asked the defense to identify any inaccuracies in the transcript. The defense merely responded that words were missing, the conversation did not flow, and parts of the tape were unintelligible. Noting that the defense had not identified specific inaccuracies in the transcript, the court ruled as follows: "Based on my review of the tape compared to the transcript, I'm going to permit the transcript provided by the government to go

[1] Unlike, their counterparts in *Anderson*, the prosecution here did not file a motion in limine regarding their proposed audio recording.

to the jury. I am going to give them the standard instruction, however, with regard to the use of the transcripts." *Id* at 70. The First Circuit Court of Appeals affirmed the convictions, concluding, "First, we note that the district court reminded the jury at least three separate times that the tape, not the transcript, constituted the evidence in this case and that any discrepancies between the two were to be resolved in favor of the tape." *Id* at 77. "Second, even if there was error in the use of the transcript, we believe that it was harmless." *Id* at 78.

**ARGUMENT**

The government cites no acceptable reason under FRE 107 in support of their plan to make these audio recordings for the jurors. Text messages are, by definition, non-verbal. They have no oral or audio component whatsoever. They do not convey tone or intent. If the government was seeking to introduce a transcript of a recorded telephone call, or of a spate of voice memos left by the decedent that would at least be in keeping somewhat with the case law they cite. Additionally, there are no "discrepancies to resolve" here. *Contrast Anderson* at 77.

The broadcasting of these FBI narrated recordings will waste the Court and the jurors' time and will cause undue delay in the resolution of this trial.

Furthermore, and most significantly, permitting this narration unnecessarily invites prejudice to the defendant. By adding FBI voiceover actors to the equation, the government is converting a non-verbal medium to a verbal one. By replacing the texters' "voices" with their own they are affirmatively creating highly biased content.

Pursuant to 28 USC §1865, all federal jurors must be able to read, write, and understand the English language. All of the messages the government seeks to introduce are in English.

The jurors at this trial will be wholly capable of reading and interpreting these communications themselves without the unnecessary and prejudicial intonation, inflection, volume, and/or cadence these FBI voiceover actors may express and/or convey, purposefully or not.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court preclude the government from broadcasting for the jury a self-published audio narration of the relevant written communications in this case.

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys,

*/s/ Joanne M. Daley*
Joanne M. Daley, BBO # 653375
Kimberly C. Stevens, NC State Bar # 20156
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
joanne_daley@fd.org

**CERTIFICATE OF SERVICE**

I, Joanne M. Daley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 17, 2026.

*/s/ Joanne M. Daley*
Joanne M. Daley