**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No. 1:24-cr-10259-DJC |
| v. | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DEFENSE EXPERT WITNESS DANIEL LOPER**

The accused, Matthew Farwell, respectfully replies to the government's motion *in limine* to exclude the testimony of defense expert Daniel Loper, an experienced digital forensic. Mr. Farwell relies in part on Mr. Loper's Curriculum Vitae, as well as the defense's expert disclosure,[1] and seeks here to respond to the specific assertions made by the government.

## BACKGROUND

The discovery in this case involves over 400 gigabytes of data across numerous devices and cloud accounts. To aid the defense in understanding the plethora of digital material – what is it? How did it get on this device or this account, and when? What does this time stamp mean? – Mr. Loper was retained because of his expertise and years of experience in the field.

As evidenced by his Curriculum Vitae, Mr. Loper is highly qualified to opine on the digital forensic issues that have or may arise in this case. He has worked in the technology field for over 20 years and has had significant training over that time in numerous systems, platforms, and software. Indeed, the government does not challenge his credentials as a digital forensics expert.

[1] If the Court would find it helpful for counsel to file the actual Rule 16 expert disclosure provided to the government on June 8, 2026, the undersigned will gladly do so, but the general nature of the disclosure is set forth in D.E. 187 and this reply.

On June 8, 2026, the defense disclosed Mr. Loper as an expert to the government out of an abundance of caution, should his testimony be necessary at trial, which is as yet undetermined. The disclosure provided the topic areas on which Mr. Loper *may* testify, though as is evident by the disclosure, Mr. Loper's potential testimony is entirely dependent upon what testimony and evidence the government elicits in its case-in-chief.

Critically, the government has continued to drop discovery on the defense, with the most recent being July 22, 2026. Defense counsel is not yet sure whether it has received all of the discovery in this case.

**<u>LEGAL STANDARD</u>**

Under Federal Rules of Criminal Procedure 16, the "the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items *if: (i) the item is within the defendant's possession, custody, or control*; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A) (emphasis added).

The defendant must "disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, if: the defendant requests disclosure under (a)(1)(G) and the government complies." Fed. R. Crim. P. 16(b)(1)(C)(i).

The "defendant's [expert] disclosures" must contain:

> • a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;
>
> • the bases and reasons for them;
>
> • the witness's qualifications, including a list of all publications authored in the previous 10 years; and

• a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii).

As the First Circuit stated in *United States v. Bresil*, "Rule 16(a)(1)(G) 'is intended to minimize surprise that often results from unexpected expert testimony, [to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." 767 F.3d 124, 127 (1st Cir. 2014) (*quoting* Fed. R. Crim. P. 16 advisory committee's note (1993 Amendment)). When the defendant's expert "base[s] his conclusions, for the most part, on the government's data[,]" *U.S. v. Mehta*, 236 F.Supp.2d 150, 157 (D.Mass. 2002), it minimizes the concern about surprise or that "the party cross examining an expert as to the basis of the expert's opinions could unwittingly elicit prejudicial and inadmissible evidence[,]" *id.*

Though "[t]he *type* of information that must be disclosed under this Rule is [] very clear. The *quantity* and *specificity* required of the disclosure . . . is less so." *Mehta*, 236 F.Supp.2d at155 (emphasis in original). "In short, the Rule requires reciprocal disclosure of three types of information: (1) the expert witnesses' opinions, (2) the bases for those opinions, and (3) the expert's qualifications. *Id.* (*citing United States v. Yoon*, 128 F.3d 515, 526 (7th Cir.1997)).

However, "the government cannot rely on sheer quantity of paper to 'flush out' more information from the defense than is required under the rules." *Mehta*, 236 F.Supp.2d at 156. As the *Mehta* Court noted, "the defense is under no obligation to create a competing, comprehensive" accounting of its defense, "it simply needs to attack the government's case. Thus, any incongruence in disclosure is simply a function of the burdens of proof in a criminal case." *Id.*, at 156.

This "incongruence" is allowable because "[w]hile courts have upheld the basic notion of

reciprocal criminal discovery on the theory that a defendant can waive the privilege in order to obtain discovery against the government, some constitutional limitations surely remain." *Id.*, at 155-56. Thus, "if there is to be any imbalance in discovery rights, it should work in defendant's favor." *Id*, at 156 (*quoting Wardius v. Oregon,* 412 U.S. 470, 475 n.9 (1973)).

Should the court find that an expert disclosure falls short of the Rule 16 requirements, the court should first require the party supplement the report with more detail before excluding the witness. *See*, *e.g.*, *United States v. Coleman*, 149 F.4th 1, 32 (1st Cir. 2025) (noting the district court initially required the deficient expert disclosure be supplemented with more detail); *Bresil*, 767 F.3d at 127 (same).

## ARGUMENT

The government seeks to have Mr. Loper's expert testimony excluded under Federal Rules of Evidence 702. *See* D.E. 175. Yet, the government does not appear to question Mr. Loper's qualifications, or even Mr. Loper's methodology as to how he is reviewing the digital forensic material, thus the government's objection falls outside the purview of Rule 702. Instead, the government's primary complaint is that "the defendant's [Federal Rule of Criminal Procedure] 16(b)(1)(C) notice fails to identify the witness's purported expert opinions and bases and reasons for them." *Id.*, at 1. The expert disclosure regarding Mr. Loper (hereinafter "Loper disclosure") is sufficient under Rule 16.

As a threshold matter, should Mr. Loper testify, the topics of his testimony would not include in "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" that are "within the defendant's possession, custody, or control." *See* Fed. R. Crim. P. 16(b)(1)(A). Instead, as is abundantly clear in the Loper disclosure, Mr. Loper would testify as to discovery provided to the defense *by the government*.

Thus, the government has fair notice as to the universe of materials on which Mr. Loper could testify.

**A. Mr. Loper's Disclosure Provides Sufficient Notice as to Ameliorate Concerns about Surprise or Eliciting Inadmissible Evidence**

As discussed **ante**, over 400 gigabytes of digital material have been disclosed in ongoing discovery. *All* of this material has been generated and disclosed *by the government*. Mr. Loper was retained by defense counsel to aid in understanding and analyzing what that digital discovery is, as well as the many what, where, when, and how questions that arise when processing digital forensic evidence. For example, Mr. Loper has assisted defense counsel in making sense of the Apple health data on Ms. Birchmore's phone, as well "as to the pairing of Apple watches to iPhones and the best method to collect Apple Watch data from an Apple Watch should the cell phone and watch have stopped syncing." Additionally, Mr. Loper assisted defense counsel in understanding the "best practices of collecting and preserving video surveillance systems." All of which may be the bases for testimony at trial and was disclosed in the Loper disclosure.

Furthermore, the Loper disclosure makes clear that Mr. Loper's analyses and assessments are *based* on both his "training, qualifications, and experience consistent with his Curriculum Vitae," as well as the "cellphone and computer extractions *provided by the Government*," and "the work performed by the *government's experts* . . . to include but not limited to Bluetooth connections, internet search history, applications and their functionality." As a result, the defense has disclosed that Mr. Loper's expert analyses and assessments are and will be based on the very same discovery materials that came from the government, thus the government is well familiar with that constellation of materials.

Consequently, the "danger" that Mr. Loper's testimony could elicit "surprise" from the

government, or cause the government to "unwittingly elicit prejudicial and inadmissible evidence," *Mehta,* 236 F.Supp.2d at 157, because he will "base his conclusions, for the most part, on the government's data[,]" *id.*

**B. The Loper Disclosure Is Distinguishable from the Expert Disclosure at Issue in *United States v. Coleman***

First, the government erroneously compares the expert disclosure of Mr. Loper's potential testimony to that of the expert put forward in *United States v. Coleman*, 149 F.4th 1 (1st Cir. 2025), which "provided only [the expert]'s curriculum vitae and a two-sentence description of his testimony." *Id*., at 32. The disclosure stated that the expert would "explain empirical studies showing that the impacts of threatening police interactions ... include fear of bodily harm and possibly death." *Id.*, at *30.

The district court found that the expert's "'credentials and his opinion with nothing else in between' were insufficient to 'indicate what the basis of [his] opinion is.' It also had 'concerns about the methodology from a *Daubert* standpoint.'" *Id.*, at 32. The district court ordered that the defendant provide a supplemental expert disclosure. *Id*. The supplemental disclosure used the same statement and "specified the 17 articles that [the expert] was relying on to form his opinion and provided a one-sentence summary of each article." *Id.*, at 32.

Critically, the expert at issue in *Coleman* was retained to "explain empirical studies showing that the impacts of threatening police interactions ... include fear of bodily harm and possibly death." *Id.*, at 30. Yet, the disclosure did not provide

> the reasons for his opinion or describing accepted methodologies in his field or the methodologies of the disclosed articles. As the district court explained, it was "impossible for [the court] to assess even what the precise opinion is, what the methodology is." As to the disclosure of "various studies," the district court had no way to "know how to assess them" because it did not know "how they were conducted," "what data they're based on, what principles they involved, whether they were reliable principles, reliably applied and all the rest of it."

*Id.*, at 32. Thus, the district court determined that "based on the particular expert disclosure before it, that Coleman failed to meet his burden to show that [the expert]'s opinion was based on valid and reliable studies accepted in his field[,]" *id.*, which was based in social science research.

In this case, the government's comparison between Mr. Loper's expert disclosure and that at issue in *Coleman* is both inapposite and disingenuous. First, there is a significant difference between a social scientist addressing empirical studies in a field where the methodologies and practices are as vast as the conclusions drawn from them, and a digital forensics expert who applies standard digital forensic practices and procedures to analyze a specific subset of forensic discovery, all of which emanated entirely from the government.

Second, as discussed **ante**, the expert disclosure regarding Mr. Loper makes clear that his possible testimony will be based solely on discovery provided by the government and on testimony offered by the government's own expert witnesses. It also addresses the major types of discovery and technology to be addressed. Unlike in *Coleman*, it is clear what the bases, reasons, and overall subject matter of Mr. Loper's testimony will be. Therefore, the *Coleman* Court's concerns with methodology and bases for the expert's determinations do not exist as to Mr. Loper.

Third, unlike the social scientist in *Coleman* introducing and interpreting broad swaths of data and research, along with novel theories and approaches to that data from empirical studies, Mr. Loper's testimony is grounded in fact: what kind of data is this? Where did it come from? How did it get there? What else can be gleaned from this piece of data about its provenance, timing, etc.? These testimony types are not equivalent – one theoretical and interpretive based on original research, the other based on tangible digital discovery accessible to both parties.

Lastly, as outlined **ante**, the Loper disclosure provides significantly more detail than the

two-sentence disclosure in *Coleman*, outlining the primary areas Mr. Loper would likely opine, should he take the stand. The Loper disclosure provides also that these opinions would be based on his "training, qualifications, and experience," which are made delineated in his C.V.

**C. Mr. Farwell Cannot Know the Specifics as to Mr. Loper's Testimony Before Hearing the Government's Case-In-Chief**

Beyond the aforementioned disclosed testimony, the defense cannot yet know what types of digital forensic material it will need to use in its case-in-chief without first hearing the government's case-in-chief. Indeed, there is the very real possibility that Mr. Loper may not need to testify at all if the government puts on the same types of digital evidence the defense considers essential to its case, and if the defense can elicit sufficient and necessary testimony on that digital evidence from government's experts.

Additionally, or alternatively, depending on the digital forensic evidence put on by the government in its case-in-chief, Mr. Loper may only testify as a rebuttal witness, addressing the testimony of government-noticed expert witnesses Jessica Hyde and Christopher Beckstrom. Should that be the case, Mr. Loper again cannot preview for the government what topics he will cover until after the government concludes its case-in-chief, which would include the testimony of Ms. Hyde and Mr. Beckstrom.

Critically, the defense has no obligation to preview its case for the government, nor does Rule 16 require that the defense do so. *Mehta*, 236 F.Supp.2d at 156. In fact, as the government well knows, the defense is not obligated to put on a case at all! *See* U.S. Const. amend. V; *Chambers v. Mississippi*, 410 U.S. 284 (1974).

**D. Should the Court Find the Loper Disclosure Deficient, the Remedy is Supplement Not Exclusion**

Should the Court determine that the defense's disclosure of Mr. Loper lacks the necessary detail as to the topics he *may* cover and the methodologies he applied to address those potential

topics, the defense can supplement the expert disclosure. As noted **ante**, when an expert is qualified to opine on the disclosed topics using reliable methodologies accepted in his or her field, as is required by Rule 702, but it is only that the disclosure does not provide sufficient detail, supplementing the disclosure is the remedy, not exclusion. *See Coleman*, 236 F.Supp.2d at 32 (noting the court allowed defendant to supplement the expert's disclosure rather than exclude the expert testimony); *Mehta*, 236 F.Supp.2d at 154.

## CONCLUSION

For all the reasons above, Mr. Farwell's Rule 16(b)(1)(C) disclosure of Mr. Loper's expert testimony provides the government with sufficient notice of any testimony he may offer to the extent the defense is aware of what those topics may be prior to the conclusion of the government's case-in-chief. Therefore, this Court should allow Mr. Loper to testify as an expert in this case. Alternatively, should the Court determine that the disclosure does not provide sufficient information, Mr. Farwell requests that this Court allow him to supplement the disclosure accordingly and re-notice both the Court and the government.

Dated: August 17, 2026

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys,

*/s/ Joanne M. Daley*
Joanne M. Daley, BBO # 653375
Kimberly C. Stevens, NC State Bar # 20156
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Joanne_daley@fd.org
Kim_Stevens@fd.org

**CERTIFICATE OF SERVICE**

I, Joanne M. Daley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 17, 2026.

*/s/ Joanne M. Daley*
Joanne M. Daley