UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW FARWELL<br><br>Defendant | CRIMINAL No. 24-10259-DJC<br><br>**Leave to file granted on August 26, 2026** |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS BY DR. THOMAS ANDREW, M.D.**

The government submits this memorandum to respond to the spurious allegation of misconduct included in defendant Matthew Farwell's response to the government's motion to exclude testimony by Dr. Thomas Andrew, M.D. ECF No. 224 at 11–12. Farwell alleges that government counsel, FBI agents, and Dr. William Smock, M.D., "converged on" the assigned medical examiner during meetings and pressured her to change the initial ruling that Sandra Birchmore died by suicide. *Id.*[1] Farwell claims that Dr. Andrew, who did not attend the meetings, will testify that this must have happened. Dr. Andrew's speculation about what happened at meetings he did not attend is plainly inadmissible.

The Court should exclude Dr. Andrew's opinion about the government's meetings with the medical examiner, Dr. María Del Mar Capó Martínez, because (1) Dr. Andrew has disclosed no specific experience that would make him qualified to opine about alleged "pressure" applied to Dr. Capó Martinez; (2) a conclusion about alleged witness tampering is not an appropriate topic

[1] This is not the first time Farwell has made this unsupported allegation. At the detention hearing, Farwell argued, "And [the Office of the Chief Medical Examiner's] opinion has not changed despite the fact that the government has met with that office on at least two occasions in an attempt to get them to change their opinion, and they have not swayed." ECF No. 134 at 9.

for expert testimony because it is not a subject that is beyond the understanding of the average juror; and (3) the Court should reject Farwell's efforts to confuse and mislead the jury by offering expert testimony where there is no evidence to prove the underlying facts.

## I. Dr. Andrew has disclosed no experience or methodology for his opinion that Dr. Capó Martinez's ruling was the product of government pressure.

Farwell claims that Dr. Andrew is qualified to opine that Dr. Capó Martinez revised her ruling to "undetermined" because prosecutors, FBI agents, and Dr. Smock pressured her to do so during meetings in 2024 and 2026. ECF No. 224 at 12. The problem is Dr. Andrew fails to disclose specific facts about his experience that support his alleged ability to determine when law enforcement has caused another medical examiner to change his or her ruling. *See* Fed. R. Evid. 702.

The sole basis for Dr. Andrew's alleged expertise is his experience "interacting with prosecutors who have pressured him to change his determinations as to cause and manner of death to suit their theory of the case." ECF No. 224 at 12.[2] This does not demonstrate that he is an expert who can detect when other medical examiners are the subject of pressure allegedly applied during meetings with law enforcement. His expertise boils down to a statement that someone pressured him, so he can reliably detect whenever it happens to another medical examiner. But that is not the standard for admission of expert testimony. *See Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70–71 (1st Cir. 2024) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. Indeed, *Daubert* made clear . . . an expert's opinion 'must be

[2] Farwell's counsel met with Dr. Capó Martinez on June 10, 2026. Farwell has not produced any reports reflecting defense counsel's interactions with Dr. Capó Martinez during that meeting.

supported by appropriate validation' and rest on 'more than subjective belief or unsupported speculation.'") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).

Dr. Andrew's disclosure does not help the Court understand the basis for his claim that he can know when another medical examiner's opinion is the product of pressure. Dr. Andrew has failed to explain the methodology or process he uses to determine what other medical examiners are thinking when they decide to change, or not change, a ruling. He fails to explain why his so-far-unidentified anecdotal experience qualifies him to draw conclusions about what other medical examiners have done in other cases that do not involve Dr. Andrew.

Ultimately, Dr. Andrew claims to offer a remarkable opinion. If taken at his word, he can know the effect government counsel had on a medical examiner without participating in the interaction or identifying the clues he pieced together to gain that knowledge. If he can do this, it would be an extraordinary ability. Therefore, the government is entitled to examine Dr. Andrew's qualifications and learn about what must be a unique methodology. To that end, the government requests a *Daubert* hearing at which the government intends to ask Dr. Andrew to identify (1) the cases in which he has been subject to pressure by prosecutors seeking to cause him "to change his determinations as to cause and manner of death to suit their theory of the case"; (2) the names of the prosecutors who allegedly pressured Dr. Andrew to change rulings; (3) the basis for Dr. Andrew's conclusion that his experience, if any, is consistent with the experience of other medical examiners; and (4) importantly, the methodology or process he uses to divine the application of pressure applied to any other medical examiner without observing the interactions between that medical examiner and any prosecutor or other member of law enforcement.

**II. <u>Witness tampering is not the proper subject of expert testimony</u>.**

Putting aside the fact that Dr. Andrew has yet to explain his ability to know that a medical examiner's decision was the product of improper pressure from law enforcement, this phenomenon is not the proper subject of expert testimony. "Qualified expert witnesses generally may offer opinion testimony if that testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011) (quoting Fed. R. Evid. 702). "Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real" because it can "put the expert's stamp of approval" on the party's theory. *See United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994).

Here, Farwell claims Dr. Andrew's opinion is simply a "logical deduction" from the nature and timing of the meetings. ECF No. 224 at 12. "'Expert testimony does not assist where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, the [trier of fact's] own perceptions, or simple logic.'" *See United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir. 2006) (quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6264 (2005)). Because Dr. Andrew's testimony is simply a "logical deduction" from circumstances about which he has no personal knowledge, it is not proper expert testimony. *See also Ankuda v. R.N. Fish & Son, Inc.*, 535 F. Supp. 2d 170, 174 (D. Me. 2008) ("A statement of the obvious – which is within the ken of a lay jury or a judge presiding at a bench trial – is not a proper subject of expert testimony.").[3]

---

[3] Farwell may cross-examine Dr. Capó Martinez to explore the basis for the revised ruling. *See* ECF No. 187 at 9.

### III. <u>The Court should exclude Dr. Andrew's opinion under Rule 403</u>.

Farwell claims that Dr. Andrew will not challenge Dr. Capó Martinez's professionalism. ECF No. 224 at 12. Instead, he intends to point the finger at government counsel. *Id.* However, Farwell has no actual evidence or good-faith basis to claim that the government did anything improper during its meetings with Dr. Capó Martinez. All Farwell has is Dr. Andrew's apparent willingness to speculate (albeit wrongly) about what the government did during meetings Dr. Andrew did not attend. At trial, Dr. Andrew's testimony will mislead and confuse jurors. Fed. R. Evid. 403. That is because Farwell will use Dr. Andrew's opinion to argue specific facts about what happened in this case that neither Dr. Andrew nor any other witness can establish: (1) the government did something improper during the meetings with Dr. Capó Martinez and (2) it caused Dr. Capó Martinez to change her ruling. Therefore, even if the Court were to conclude that Dr. Andrew's testimony satisfies Rule 702, his testimony is inadmissible under Rule 403. *See United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013) (holding "even if [expert testimony] passes the requirements of Rule 702, [it] remains subject to Rule 403's balancing test"); Fed. R. Evid. 403. [4]

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: <u>/s/ Brian A. Fogerty</u>
BRIAN A. FOGERTY
ELIZABETH C. RILEY
TOREY B. CUMMINGS
Assistant United States Attorneys

---

[4] The government has observed that some of Farwell's arguments have been imbued with unsupported allegations that counsel is acting in bad faith or even misleading the Court. *See, e.g.*, ECF No. 134 at 5 ("[the government]" shouldn't use their bail memos to mislead the Court, the public, and the press about the evidence in this case"). These allegations are neither true nor are they a necessary component of the adversarial process. The government's view is that allegations of professional misconduct are serious and should be based in fact.

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

/s/ Brian A. Fogerty___________
BRIAN A. FOGERTY
Assistant United States Attorney

Date: August 26, 2026