**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No. 1:24-cr-10259-DJC |
| | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**DEFENDANT'S THIRD SUPPLEMENTAL NOTICE OF EXPERT TESTIMONY**

Summary of Testimony:

In response to government letter dated September 13, 2026, the defense provides the following supplemental notice of discovery.

I. **Testimony regarding power on/off event on Ms. Birchmaore's MacBook Pro**

The defense previously disclosed that Mr. Loper would testify to a four second power on/off event on the laptop that occurred at 9:41:43 pm on 2/1/2021. Mr. Loper withdraws this testimony. Upon further review of the digital discovery, Mr. Loper can now state with certainty that the event was triggered by the SoftwareUpdateNotificationManager, but cannot state if the triggered event was solely a system initiated process or other factors such as the opening of the laptop display.

II. **Testimony regarding the forensically sound methodology (Best Practice) of Apple Watch artifact recovery**

Mr. Loper's anticipated testimony regarding the forensically sound methodology for the sync'ing of an Apple Watch to its paired device is the same as defined by the government's forensic expert Christopher Beckstrom of the New England Regional Computer Forensic Laboratory Request No. NER240516003 dated November 4, 2024, and provided to the

defense on September 13, 2026. Analyst Beckstrom on page 4, paragraphs 5 and 6 identifies that a non-forensic method can be used to sync the devices to subsequently obtain a forensic extraction of the sync'd data from the Apple Watch paired device.

Mr. Loper will opine that although the term non-forensic is being used by Mr. Beckstrom, the methodology should still be considered a Best Practice for the process meets Daubert standard as a repeatable and defensible methodology. Mr. Loper will opine that the process he will outline is no different to an examiner today placing an Android device in developer mode or putting an iPhone in Airplane mode prior to executing a forensic extraction. Often forensic examiners need to make manual changes to a cell phone during the initial set up in the forensic process in order to put the cell phone in a state that the forensic tool can access the device vulnerabilities in order to forensically extract data from them. Sync'ing an Apple Watch to its paired device in order to gather data that was not sync'd would be no different.

Mr. Loper will outline the methodology a forensic expert can follow when attempting to resync an Apple Watch to its paired device. The steps a forensic examiner could follow to gather data from an Apple Watch once the paired iPhone can be accessed is as follows:

1. Take a full file system (FFS) forensic extraction of the paired iPhone device. This will create a baseline image of the paired device and capture the data prior to the sync'ing of the Apple Watch. This is to preserve the data before the sync occurs and possible data alteration due to the sync
2. Place the iPhone and Apple Watch in a Faraday cage to prevent outside signals from interfering with the sync process.
3. Turn on the paired iPhone and unlock it.

4. Ensure that Bluetooth and WiFi are enabled on the iPhone.
5. Power on the Apple Watch and determine if the iPhone trusted pairing connects the Apple Watch to the iPhone.
6. Also observe if the connection unlocks the Apple Watch.
7. If the Apple Watch does not unlock using the trusted pairing, see if the iPhone passcode is the same for the Apple Watch.
8. If the Apple Watch unlocks, determine if Bluetooth is disabled. If Bluetooth is disabled turn on the Bluetooth on the Apple Watch.
9. See if Apple Watch and iPhone are now connected.
10. If the Apple Watch and iPhone are connected let the devices sync.
11. Once the Apple Watch syncs to the iPhone proceed to follow the methodology to recollect the iPhone and obtain the newly sync'd data.

Mr. Loper will opine that through his experience and training the government could have taken steps to attempt to sync data from the Apple Watch to the paired iPhone. He will also opine that there is no guarantee that a sync of the Apple Watch would render any new forensic artifacts.

III. **Testimony regarding Apple Health Data**

Mr. Loper will opine to Apple Health data that is obtained from an iPhone. The government has identified that Ms. Birchmore's Apple Watch last sync'd to the iPhone 12 on 01/31/2021 at 11:00:00 (UTC-5) and Mr. Loper concurs. After the last sync, there is no Health data from the Apple Watch. The reason why the Apple Watch did not sync after that time has never been determined. The data that Mr. Loper will opine to is located in the healthdb_secure.sqlite database and is the same data that the government's experts, Christopher Beckstrom and Jessica Hyde, will opine to.

Mr. Loper will opine that the Apples published Core Motion framework CMPedometer[1] class does not identify a person's gait or height characteristics as an input to step count. Mr. Loper will also opine on the mere fact that Apple does not publish its algorithms, and an expert cannot opine to what calculations the algorithm produces. That Apple Core Motion Framework merely counts steps taken. Mr. Loper will opine that walking distance would be considered the data point that could differentiate two users of different height and gaits were potentially holding the device but will opine that there is insufficient data to make this determination on Ms. Birchmore's device on the date of 2/1/2021.

Mr. Loper will testify that Apple iPhone's estimates the average step length while walking on a flat surface and the iPhone is carried near the waist[2], and height must be current "to ensure accuracy". Mr. Loper will opine that the healthdb_secure.sqlite on the iPhone was configured for Ms. Birchmore's height of 157.48 centimeters or 5'2" (See attachment A). Mr. Loper will testify that analysis of the healthdb_secure.sqlite database samples table indicates that there were 103 health samples on 2/1/2021. None of these samples are derived from Apple Watch data. Mr. Loper will opine that Apple does not publish a fixed formula for determining distance.

Mr. Loper analyzed 9 matched samples from the database. A matched sample is the Step and Distance sample with the same sample start and end time. The significance of this analysis is to determine two objectives. The first goal is to determine if the step length could be determined by taking the distance in meters and dividing it by the step count, and second to determine if the data could tell if two different people were holding the cell phone

---

[1] Apple. "CMPedometer." *Apple Developer Documentation*, developer.apple.com/documentation/coremotion/cmpedometer. Accessed 21 Sept. 2026.

[2] Apple. "Walking Step Length." Apple Developer Documentation, developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/walkingsteplength. Accessed 21 Sept. 2026.

(See Attachment C). Mr. Loper started his analysis with the sample starting time of 4:59:44 PM (UTC-5) for its sample end time is at 05:01:31 PM (UTC-5). The duration of this sample is 1 minute and 47 seconds. It is during this sample time in which Ms. Birchmore is observed on the lobby surveillance camera picking-up a Doordash order. While in the lobby, Ms. Birchmore sends a text to the Doordash driver at 05:01:24 PM (UTC-5) "Im at the door." The last sample is at 9:40:19 PM (UTC-5) for a total of 8 Steps.

Analysis of the "step length" data shows the smallest step length is 39 centimeters and the largest of 75 centimeters. In eight of the nine samples Ms. Birchmore is home alone with no visitors. The end time of the last sample is 9:40:21 PM (UTC-.5).

Mr. Loper will opine that as part of his analysis he applied the 1 minute and 47 second sample taken at 4:59:44 PM (UTC-5) to determine if he could correlate an approximate exit time for Mr. Farwell exiting the elevator. All things being equal, then one would expect Mr. Farwell to exit the elevator at 9:42:28 PM (UTC-5). Based on the government's expert, Mr. Farwell is observed getting off the elevator at 9:43:33 PM (UTC-5) a delta of 1 minute and 5 seconds. Without knowing the exact time Mr. Farwell left Ms. Birchmore's apartment nor the events that took place, Mr. Loper will opine that there is not enough data to accurately estimate the time it takes to leave Ms. Birchmore's apartment and get to the lobby. There are factors that can alter or delay the time to leave Ms. Birchmore's apartment and arrive at the lobby are:

1. What floor the elevator was on at the time Ms. Birchmore went to the lobby versus when Mr. Farwell left.
2. We don't know the time Ms. Birchmore left her apartment, just the sample duration and time Ms. Birchmore is in the lobby.

3. It is unknown when exactly Mr. Farwell left the apartment in relationship to the step count sample time.
4. It is unknown if Mr. Farwell loitered in the hallway prior to pressing the elevator button.

In addition, Apple does not publish its algorithm on how it samples health data or what triggers its algorithm to run. Mr. Loper will opine that through his analysis, there is no way a forensic examiner can conclude that a different person other than Ms. Birchmore held the iPhone 12 on the evening of 2/1/2021 based on the data that is available. Mr. Loper will also opine that the step count and sample date times are not absolute and that there is an error of margin. That Apple does not publish the error of margin for its Health data. Mr. Loper will opine that published validation studies show that accuracy varies with walking conditions and where the iPhone device is located[3] and that the average step count of an iPhone was underestimated 12% of the time. A more recent study of the iPhone M7 motion co-processor[4] shows that the mean absolute error rate at slow speed walking is 21% and that customary and fast speeds were 8% and 4%. It should be noted that the government's expert has stated that iPhones are accurate 92% to 98% of the time. Mr. Loper will opine that through his analysis of the data that any statements to the accuracy of the steps, distance, and sample times would be pure speculation for there are many factors that determine this data such as walking speed, location of

---

[3] Brooke, John, et al. "Concurrent Validity of the Fitbit for Assessing Sedentary Behavior and Moderate-to-Vigorous Physical Activity." *Journal of Physical Activity and Health*, vol. 14, no. 9, 2017, pp. 656–661. *PubMed Central*, PMC6329418

[4] Tudor-Locke, Catrine, et al. "How Many Steps/Day Are Enough? For Adults." *International Journal of Behavioral Nutrition and Physical Activity*, vol. 8, 2011, article 79. *PubMed*, pubmed.ncbi.nlm.nih.gov/27240005

device on the person (Pocket near hip, hands, purse), and that the examiners do not know what triggers the Apple algorithm to begin the data sample.

IV. **Testimony regarding "Blocked" phone numbers**

Mr. Loper will discuss the significance of the /mobile/Library/Preferences/ com.apple.cmfsyncagent.plist and blocked numbers as it relates to Mr. Farwell's iPhone 11 which was collected on 2/9/2021. Mr. Loper will opine that the .plist file is part of Apples CommunicationsFilter.framework and that it is considered an iOS forensic artifact for blocked communication identifiers.[5] Magnet Forensics also identifies this .plist as storing "blocked numbers"[6]. Mr. Loper will discuss his analysis that the .plist file was created on 2/6/2021 at 11:26:56 PM (UTC-5) and this date is when the .plist last refreshed itself and not the date of when any number was blocked. Mr. Loper will also opine that in his analysis of Mr. Farwell's iPhone, Ms. Birchmore's previous phone number 781-408-0236 is also included in the list of blocked numbers. There are no artifacts within the iPhone 11 Advanced Logical extraction that can tell a forensic examiner the date and time when a phone number was blocked.

Signed under the pains and penalties of perjury this the 27th day of September 2026

Daniel Loper

---

[5] *Smartphone Forensics Poster*, accessed September 22, 2026, PDF document

[6] Magnet Forensics, "The Meaning of Messages," *Magnet Forensics*, accessed September 22, 2026, Magnet Forensics

Attachment A – Ms. Birchmore's iPhone 12 Healthdb_secure.sqlite Height Value

samples (423871)

| data_id | start_date | end_date | data_type |
|---|---|---|---|
| 42359 | 10/19/2016 8:39:33 PM | 10/19/2016 8:39:33 PM | 2 |

quantity_samples (418801)

| data_id | quantity | original_quantity | original_unit |
|---|---|---|---|
| 42359 | 1.5748 | 157.48 | 1 |

| Height Value Timestamp | Height (in Meters) |
|---|---|
| 2016-10-19 20:39:33+00:00 | 1.5748 |
| Height Value Timestamp | Height (in Meters) |

| Height (in Centimeters) | Height (Feet and Inches) |
|---|---|
| 157 | 5'2" |
| Height (in Centimeters) | Height (Feet and Inches) |

Attachment B: Healthdb_secure.sqlite Step and Distance data

| data_id | start_date_(UTC-5) | end_date_(UTC-5) | data_type | Unit | value |
|---|---|---|---|---|---|
| 805420 | 1990-02-01 16:59:44 | 1990-02-01 17:01:31 | 7 | Steps | 28 |
| 805421 | 1990-02-01 16:59:44 | 1990-02-01 17:01:31 | 8 | Meters | 14.6800000000076 |
| 805422 | 1990-02-01 17:30:22 | 1990-02-01 17:37:44 | 7 | Steps | 203 |
| 805423 | 1990-02-01 17:30:22 | 1990-02-01 17:37:44 | 8 | Meters | 110.979999999923 |
| 805424 | 1990-02-01 18:06:09 | 1990-02-01 18:07:56 | 8 | Meters | 16.6699999999983 |
| 805425 | 1990-02-01 18:06:09 | 1990-02-01 18:07:56 | 7 | Steps | 24 |
| 805426 | 1990-02-01 19:39:44 | 1990-02-01 19:39:47 | 7 | Steps | 2 |
| 805427 | 1990-02-01 19:39:44 | 1990-02-01 19:39:47 | 8 | Meters | 0.779999999998836 |
| 805428 | 1990-02-01 20:15:24 | 1990-02-01 20:15:32 | 7 | Steps | 12 |
| 805429 | 1990-02-01 20:15:24 | 1990-02-01 20:15:32 | 8 | Meters | 7.83999999999651 |
| 805430 | 1990-02-01 20:29:29 | 1990-02-01 20:38:44 | 7 | Steps | 31 |
| 805431 | 1990-02-01 20:29:29 | 1990-02-01 20:38:44 | 8 | Meters | 20.5299999999988 |
| 805432 | 1990-02-01 21:00:41 | 1990-02-01 21:10:40 | 7 | Steps | 39 |
| 805433 | 1990-02-01 21:00:41 | 1990-02-01 21:10:40 | 8 | Meters | 26.1499999999942 |
| 805434 | 1990-02-01 21:10:40 | 1990-02-01 21:10:48 | 8 | Meters | 4.44000000000233 |
| 805435 | 1990-02-01 21:10:40 | 1990-02-01 21:10:48 | 7 | Steps | 6 |
| 805436 | 1990-02-01 21:40:19 | 1990-02-01 21:40:21 | 7 | Steps | 8 |
| 805437 | 1990-02-01 21:40:19 | 1990-02-01 21:40:21 | 8 | Meters | 6 |

Attachment C: Calculated Step Length (Meters/Steps)

| Unit | value | Step Length Centimeters |
|---|---|---|
| Steps | 28 | |
| Meters | 14.6800000000076 | 0.52 |
| Steps | 203 | |
| Meters | 110.979999999923 | 0.55 |
| Meters | 16.6699999999983 | 0.69 |
| Steps | 24 | |
| Steps | 2 | |
| Meters | 0.779999999998836 | 0.39 |
| Steps | 12 | |
| Meters | 7.83999999999651 | 0.65 |
| Steps | 31 | |
| Meters | 20.5299999999988 | 0.66 |
| Steps | 39 | |
| Meters | 26.1499999999942 | 0.67 |
| Meters | 4.44000000000233 | 0.74 |
| Steps | 6 | |
| Steps | 8 | |
| Meters | 6 | 0.75 |