UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW FARWELL,<br><br>Defendant | CRIMINAL No. 24-10259-DJC |

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE MISCHARACTERIZATION OF THE DEFENDANT'S LIMITED CONSENT**

The United States of America moves the Court *in limine* to prohibit the defense from: (1) arguing to the jury that the defendant consented to a full search of his iPhone 11 on February 9, 2021; (2) attempting to mislead the jury by cross-examining law enforcement witnesses regarding their failure to search the iPhone 11 based on any consent given before October 2, 2026; (3) introducing any self-serving and misleading hearsay, such as the defendant's statement on the consent form, unless the defendant testifies at trial; and (4) objecting on notice grounds to the inevitable trial exhibits generated from the October 2, 2026 search of the defendant's iPhone 11.

On February 9, 2021, the Massachusetts State Police ("MSP") acquired a forensic image of the defendant's iPhone 11. They did so after the defendant deleted evidence from the phone in anticipation of an inquiry by MSP. Nevertheless, until October 2, 2026, the defendant had never consented to a full search of the iPhone 11, or whatever was left on the device after he deleted items. The defendant explicitly refused to authorize MSP investigators to search for anything other than text messages with Sandra Birchmore, the very items he claimed he already deleted. To allow Farwell's counsel to argue otherwise would allow them to rewrite history and, more importantly, mislead the jury. Notably, at no point before October 2, 2026, had the defendant taken the position that he consented to a full search of his iPhone 11 on February 9, 2021. Nor had the defendant

argued that the government inexplicably failed to conduct a search based on that consent in the five and a half years that followed.

The government seeks this ruling prior to the start of trial because any reference to the foregoing evidence — including during voir dire or opening statements—could result in prejudice that the Court would be unable to remedy simply by sustaining a timely objection.

**Background**

On February 4, 2021, at approximately 11:00 a.m., Ms. Birchmore was found deceased in her apartment by members of the Canton Police Department. She was seated, partially reclined under a closet doorknob. A ligature with her hair wrapped in it was tied tightly around her neck. The other end was tied to the closet doorknob.

On February 6, 2021, at approximately 1:00 p.m., local law enforcement officers and MSP investigators identified the defendant, masked and wearing a hood over his head, entering Ms. Birchmore's apartment at approximately 9:14 p.m., several hours after she was last seen alive on surveillance camera. He was captured on video, again masked and with his hood up, leaving at approximately 9:43 p.m. Immediately after identifying the defendant on surveillance video, MSP investigators went to the parking lot of an elementary school to interview the defendant. The defendant previewed for investigators that he had "deleted all communications with Sandra." For three days after meeting with investigators, the defendant was permitted to retain his personal cell phone, an iPhone 11.

On February 9, 2021, Farwell and his attorney met with MSP Sgt. John Fanning in the parking lot of the Norfolk County District Attorney's Office.[1] The defendant signed a consent

[1] Fanning now holds the rank of lieutenant.

form in which he purported to consent to the search of items "related to the death suicide of Sandra Birchmore." *See* Exhibit A. However, in a recorded interview with FBI agents during the early stages of the federal investigation, Sgt. Fanning indicated that the defendant orally limited his consent to a search of his phone for only "conversations with Sandra," thus rendering the written consent form misleading. *See* Exhibit B.

On that same day that the defendant finally gave his iPhone 11 to Sgt. Fanning, the defendant conducted a web search on his Stoughton Police Department-issued cell phone to determine whether deleted iMessages could be recovered by Cellebrite. Cellebrite is the digital forensic tool that the MSP and many other law enforcement agencies often use to search cell phones. Indeed, it is the tool ultimately used to review Farwell's iPhone 11 for evidence of the communications with Birchmore. This corroborates the fact that Farwell only believed MSP had authority to search for a narrow string of messages, all of which he knew he deleted before providing his device.

Former MSP Trooper Nicholas Guarino has confirmed that when he performed the extraction on the defendant's iPhone 11 on February 9, 2021, he looked only for "messages between Farwell and Birchmore" because that was the scope of the consent. Fromer Trooper Guarino found no such messages because, as Farwell had previewed for investigators, Farwell had deleted them. That same day, MSP returned the iPhone 11 to Farwell.

On March 10, 2021, an attorney representing the defendant wrote a letter to Sgt. Fanning stating, in part, that his client had permitted them to download only "certain information" from his mobile phone. In that same letter, the defendant declined to assent to investigators' other requests.[2]

While MSP investigators did obtain a forensic image of the iPhone 11 on February 9, 2021, they did so out of technological necessity. They only had legal authority to review the limited material that was within the scope of the defendant's consent. At no point did Farwell's attorney or Farwell ever expand the scope of the February 9 consent.

Over the past two years of litigation, the fact of the defendant's limited consent has arisen several times. However, until October 2, 2026, the Friday before jury empanelment, Farwell had never claimed that he consented to a broader search of his iPhone 11. Nor had he argued, despite multiple opportunities, that he given full consent five and a half years ago.

First, on October 1, 2024, an Assistant U.S. Attorney who was not part of the prosecution team (the "Filter AUSA") gave defense counsel a copy of the forensic image of the defendant's iPhone 11. In the accompanying letter, the Filter AUSA assured defense counsel that the prosecution team had not reviewed the contents of that forensic image. *See* Exhibit C ("The contents of your client's phone have not been reviewed by the investigative team.").

On April 28, 2026, defense counsel participated in a detention hearing seeking. During that hearing, defense counsel did not inform Magistrate Judge Kelley that the defendant agreed to let investigators conduct a full search of his phone five days after Ms. Birchmore was found dead. Even when the government informed Judge Kelley that the defendant agreed to let State Police

---

[2] While the government will not argue that the defendant had a consciousness of his own guilt because he refused to provide a DNA sample or take a polygraph test, the defendant should not be permitted to argue that he is innocent because he consented to something that he did not.

investigators search his phone "but only for texts between him and Ms. Birchmore, texts that he knew he had deleted," defense counsel did not take the position that the defendant, as they now argue, consented to a full search of his phone for any evidence related to the death of Sandra Birchmore. *See* Exhibit D. Had that statement been true, it would have been a natural rebuttal to the government's argument that Farwell only consented to a search for what he knew did not exist.

Furthermore, on September 16, 2026, the government moved to exclude defense expert Daniel Loper's testimony regarding an artifact from the defendant's iPhone 11. *See* ECF No. 265; *see also* Exhibit S13. The government argued, in essence, that Loper cannot provide expert testimony regarding a digital artifact unless he makes the underlying data available for review. This is especially true when this defense expert has had to withdraw an opinion after the government challenged it. In its motion, the government stated:

> [MSP] obtained Farwell's limited consent to review the iPhone 11 for communications between Farwell and Birchmore. To do so, MSP extracted data from the entire device, reviewed the relevant portion, and confirmed that no messages between Farwell and Birchmore existed on the devices. Based on the limited scope of Farwell's consent, the prosecution team has not reviewed the data extracted from the iPhone 11. However, through a filter team, the government produced that data to Farwell's counsel in 2024.

ECF No. 265 at 3–4. In response, defense counsel did not claim that the government had authority to conduct a full search of the device.

Given the nature of this case, and through the course of extensive pretrial litigation, it is clear that Farwell's consent was limited. That fact was accepted by all parties, that is, until October 2, 2026.

## Legal Authority

A motion *in limine* is an appropriate vehicle for seeking a ruling on the boundaries of opening remarks. *See, e.g., United States v. Doyle*, 121 F.3d 1078, 1093–94 (7th Cir. 1997) (affirming order granting government's motion in limine to limit scope of defense opening statement). A district court's authority to issue in limine rulings arises from its inherent authority to manage the course of trials. *Luce v. United States,* 469 U.S. 38, 42 n.4 (1984).

Pursuant to Fed. R. Evid. 403, the Court has discretion to exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time. Fed. R. Evid. 403. And it is well settled that neither Rule 801 nor any exception under Rule 803 or 804 authorize the admission of a party's self-serving hearsay. *See United States v. Beltre,* No. 98-4162, 1999 U.S. App. LEXIS 20056 (4th Cir. 1999) (unpublished) (quoting *United States v. Wenzel*, 311 F.2d 164, 168 (4th Cir. 1962)); *see also United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir, 1996) ("The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party.").

## Argument

### I. The Court Should Preclude Farwell's Counsel From Telling the Jury that The Defendant Consented to a Search As Described In the MSP Consent Form.

The Court should preclude Farwell from telling the jury that Farwell's consent tracked the language in the MSP consent form. Because it is not true.

On October 2, 2026, four days before jury selection, to the government's surprise, an attorney for the defendant announced in open court that on February 9, 2021, the defendant

consented to a full search of his phone for all evidence related to the death of Sandra Birchmore.[3] When the Court inquired, Farwell's counsel stated unequivocally that it was her position that Farwell consented to the full search in February 2021 and that the government still had legal authority to search Farwell's phone for evidence of Ms. Birchmore's death, except in any communications that Farwell had with his wife or counsel.

When the government objected to Farwell's misstatement of the facts, the Court inquired about defense counsel intent to use the defendant's alleged consent in opening statements. Another attorney for the defendant then indicated that the defense may tell the jury that Farwell's consent was *not* limited solely to the communications between himself and Ms. Birchmore, but would track the language on the consent form. However, that is the problem. Such a statement would be at odds with the recorded interview of Sgt. Fanning, the interview of Trooper Guarino, and extraction parameters of Trooper Guarino applied. Counsel indicated that the defense would confine its argument to the language of the document, presumably Exhibit A, which is inadmissible both because it is hearsay and because it is misleading. A statement of consent may, in certain circumstances, be a non-hearsay verbal act. *United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989). However here, the consent was actually more limited than what was written in the form, rendering it hearsay because the defendant's verbal consent, and not the form itself, had the legal effect.

Had the defendant's recent announcement been true, members of local law enforcement would have been able to search the defendant's iPhone 11 for his web searches, contact list, his photos and videos, health data, step count, GPS and other location evidence, text messages with

[3] The only categories excluded from this alleged prior consent were communications with the defendant's wife and counsel.

others leading up to and following Ms. Birchmore's death, as well as his call history. The defendant offers no theory for why, despite allegedly providing full consent, investigators only searched the small fraction of his phone that could contain messages with Birchmore: messages that he, by all accounts, deleted in advance of his meeting with investigators.

## II. Failing to Limit Counsel's Remarks to The True Scope of the Defendant's Consent Will Confuse the Jury and Prejudice the Government.

Farwell should not be permitted to mislead the jury. The defense's revisionist history is not supported by the evidence, and at odds with counsel's communications as well as the arguments—or lack thereof—that Farwell's counsel has made over the last two years.

The government specifically requests that the Court preclude defense counsel from telling the jury in opening statement that the jury will hear evidence that the defendant consented to a search of his personal phone for any evidence related to the death of Ms. Birchmore. This will suggest to the jury that the defendant met with investigators with an innocent mind, willing to share his devices to aid the investigation. Of course, in reality, that did not happen on February 9, 2021. The defendant was far more calculating.

While the Fourth and Fifth Amendment empowered the defendant to limit his consent and refuse to permit investigators to conduct a full search of his phone absent a warrant, he cannot now invite the jury to view him as more cooperative than he was unless he has a good faith basis to believe that is a fact that will be before the jury. However, the defendant is the only witness who could testify about this alleged full consent. All other witnesses to the conversation regarding the defendant's consent have told FBI agents that the scope of their search was limited, and they only searched for the (deleted) communications between the defendant and Ms. Birchmore.

## III. The Court Should Exclude the Consent Form and Preclude Any Statement Regarding the Content.

Farwell's counsel indicated that they would restrict themselves to the language of the consent form. However, they have not noticed this document as an exhibit. Nor should they be permitted to introduce this document at trial. The document is hearsay (Fed. R. Evid. 801) as it is a self-serving statement of the defendant that is not being offered by a party opponent. While statements of consent are often non-hearsay verbal acts, because the form does not accurately reflect the scope of consent, it is not act at all. It is merely the defendant's own out-of-court statement. Accordingly, the language of the consent form is not an appropriate topic for an opening statement.

Moreover, given what the parties know there were the oral restrictions placed on the defendant's consent, reciting the consent form would be misleading. *See* Fed. R. Evid. 403. The lengthy back-and-forth that was needed to try teasing out this issue at the Status Conference is itself an indicator of the likelihood of "unfair prejudice, confusing the issues, misleading the jury." *See id.*

**IV. The Court Should Preclude Cross-Examination Regarding the Feb. 2021 Full Consent that Did Not Happen.**

The Court should preclude the defendant from implying, through counsel's questions or arguments, that federal investigators conducted a shoddy investigation because they did not review data that they had no legal authority to search. For example, it would be improper to cross-examine the FBI case agent about the FBI's failure to search the iPhone 11 before October 2026. That cross-examination is improper because such a search would have violated the defendant's Constitutional rights, given his refusal to consent to the full search.

The government must have legal authority to search material that may be in its physical possession. For example, in *United States v. Collins*, 409 F. Supp. 3d 228, 243 (S.D.N.Y. 2019), the court denied a defendant's motion to compel the government to search or produce non-

responsive data from a third-party's iCloud account. Citing *Brady* and Rule 16, the defendant argued that the government's *Brady*/Rule 16 search of the iCloud that was completed during the scoping review was insufficient and asserted that the government had a broader obligation to do the same for the non-responsive data. The court rejected the challenge to the initial review. And it further stated that the defendant's "assertion that since the Government copied and/or imaged the entirety of the contents of the electronic devices [and the relevant iCloud], the Government is entitled to conduct another search of the non-responsive material for *Brady*/Rule 16 material, is legally flawed." *Id.* at 243-44. The court held that the "Government's possession of and ability to review [the relevant] iCloud data is necessarily circumscribed by the Fourth Amendment." *Id.* at 244. Observing that the third-party account holder had declined to consent to another review of the data, the court held "[t]he Government—having conducted a search of [the relevant] iCloud data consistent with the Fourth Amendment and a search warrant—does not have the legal authority to go back and search materials that are non-responsive, i.e., outside the scope of the search warrant." *Id.* at 244.

## V. <u>The Court Should Deem Any Notice Objections Waived for the Government Exhibits Generated from the Incriminating Evidence Found in Places on the Phone That The Defendant Did Not Permit MSP To Search.</u>

Despite the defendant's efforts to delete data, in the hours since the defendant announced he now consents to a full search, the government has identified incriminating evidence on that device. The government intends to introduce several artifacts from that device at trial. Any objections related to late notice should be waived. With the exception of the time it took MSP to quickly image his device on February 9, 2021, the defendant has had access to the original device and his counsel has had access to the forensic image of the phone since October 1, 2024. Given that the government did not have lawful authority to access the image of that phone until October 2, 2026, any objections based on notice should be deemed waived.

The evidence will show that, on February 6, 2021, the defendant lied to the State Police. The State Police then permitted the defendant to retain his cell phone for three days. On February 9, 2021, Farwell refused to consent to a search of his device, except for conversations with Ms. Birchmore, which he knew he deleted. While the defendant had the absolute right, absent a warrant, to retain his cell phone for days and refuse to provide consent for law enforcement to search, he cannot rewrite history to suggest that he was innocently forthcoming in the days following the murder of Ms. Birchmore.

If the defendant wants to argue that he believed, in 2021, that he was consenting to a full search of his phone, he can explain it to the jury from the witness stand. But at this point, based on the evidence and the record in this case, the defendant has no good faith basis to lead the jury to believe that the defendant he and his cell phone were an open book on February 9, 2021. To make an argument that is not supported by the evidence or to put before the jury a document that a party knows is misleading, is improper.

**Conclusion**

For the above stated reasons, the United States requests that the Court preclude the defendant from: arguing in his opening statement that he consented to a full search of his iPhone 11 in February of 2021; cross-examining witnesses on their failure to search a device that they had no legal authority to search; offering or referring to a document that is both hearsay and misleading; and raising notice objections to any evidence derived from the iPhone 11.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Elizabeth Riley*

TOREY B. CUMMINGS
ELIZABETH C. RILEY
BRIAN A. FOGERTY
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elizabeth Riley*
Elizabeth C. Riley
Assistant United States Attorney

Date: October 3, 2026