**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No. 1:24-cr-10259-DJC |
| | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE MISCHARACTERIZATION OF THE DEFENDANT'S LIMITED CONSENT**

The accused, Matthew Farwell, by and through counsel, respectfully replies to the government's motion *in limine* to preclude mischaracterization of the defendant's limited consent. (DE 310). For the below reasons, Mr. Farwell respectfully asks this Court to deny the government's motion as there has been no such mischaracterization.

The government's motion mischaracterizes both its own actions and the defense's position as to Mr. Farwell's 2021 personal phone and the consent he gave to the Massachusetts State Police regarding that phone. Though their attached exhibits are devoid of Bates numbers, the consent form and associated memo by Sergeant Fanning, along with the referenced letters from Mr. Farwell's attorney, have been in the government's possession since at least 2024, as indicated by their presence in the government's September 25, 2024, voluminous discovery disclosure to the defense.[1] Thus, it is the government who should not benefit from its self-serving and misleading proclamation of surprise.[2]

[1] Mr. Farwell would be happy to provide the Court with the Bates numbered records upon request.

[2] Though Mr. Farwell does not object to the government's late notice of new exhibits from the 2021 phone, Mr. Farwell clarifies that he has not waived any other objections, including but not limited to the content of those exhibits, and instead reserves the right to register such objections with the Court.

As to the government's other assertions – it is simply wrong that Mr. Farwell has contended that he "consented to a full search of his iPhone 11 on February 9, 2021." *See* D.E. 310, at 1. Instead, the defense has always understood that the form and its contents governed the parameters of any consented to search and stated the following before the Court. Furthermore, any artifacts and exhibits Mr. Farwell would seek to use, in its own case in chief or as impeachment, from that iPhone would be within that understood scope of the consent – anything "related to the death of Sandra Birchmore." *See* USAO_008863; D.E. 310, Exhibit A.

Likewise, Mr. Farwell, who has no burden to help the government prove its case, would expect that the government would read the consent form accordingly and comply with its parameters. The fact that it chose not to cannot be blamed on the defense and should not be used as grounds for late notice of exhibits from that phone, which again, has been in the possession of the government for over two years.

In attempt to justify its error, the government blames Sgt. Fanning and his representations that Mr. Farwell verbally limited his search. *See* D.E. 310, at 1. Yet the very exhibit, D.E. 310-2, that the government attached to its motion demonstrates that this is not correct. Sgt. Fanning recounted the following:

> i just read him our consent forms for both phones and he complied and uh, granted the consent on both the phones and i, *i think* *we just restricted the consent to conversations with sandra*. *He didn't want us looking into, you know, conversations with his wife or whatever. I'm pretty sure that that was written on the consent form that we were kind of keep it limited to conversations with Sandra* . . . he signed the consent outside. I brought the phones and to extract them and then give them back to him.

D.E. 310-2 (emphasis added). In an interview, likely two years after February 9, 2021, Sgt. Fanning stated that he thinks the agreement he and Mr. Farwell made as to the parameters of Mr. Farwell's consent was documented on the consent form.[3] While Sgt. Fanning, in the interview with the government, limits the parameters to "conversations with [S]andra," *see* D.E. 310-2, because Mr. Farwell "didn't want [them] looking into . . . conversations with his wife or whatever," *id*, he also explained that the parameters were memorialized on the consent form. While this may be Sgt. Fanning's two-years later recollection, that is simply not what the consent form states. It would seem that the memorialized agreement, signed *on February 9, 2021*, is the accurate representation of the parameters.[4]

Furthermore, the government tries to bolster its assertions by citing to a March 10, 2021, email from Mr. Farwell's attorney, stating that Mr. Farwell only permitted the download of "certain information." *See* D.E. 310, at 4. *See also*, USAO_008873. However, "certain information" is accurate because Mr. Farwell had asked that the detectives not review communications between he and his wife, for example. Moreover, as the attorney had likely seen, the search was for information "related to the death of Sandra Birchmore." This communication is simply accurate, not a smoking gun that Mr. Farwell limited his search only to texts between he and Ms. Birchmore.

---

[3] The government also states that Trooper Nick Guarino understood that Mr. Farwell consented only to search for communication between himself and Ms. Birchmore. However, based on Sgt. Fanning's memo to Detective Lt. Mattaliano, Trooper Guarino was not present for the interview with Mr. Farwell, and instead the parameters of consent were dictated to him by Sgt. Fanning.

[4] Notably, Sgt. Fanning appears to refer to Mr. Farwell allowing extractions of two phones in February 2021, however, the consent form only indicates that one phone was searched at that time. Based on letters and MSP memos in discovery, it appears that Mr. Farwell's Stoughton Police Department issued phone was searched in or around June 2021, and Mr. Farwell, through his lawyer, again asked that any privileged conversations between Mr. Farwell and his wife not be searched.

The government then contends that "*defense counsel* did not inform Magistrate Judge Kelley that the defendant agreed to let investigators conduct a full search of his phone five days after Ms. Birchmore was found dead." D.E. 310, at 4 (emphasis added). To support this aspersion cast upon the defense team, the government provided the transcript from the April 28, 2026, detention hearing, and then proceeded to highlight *its own arguments to Judge Kelly* (specifically pages 27-28, 30, 31, 32) across approximately *fourteen pages*. *See* D.E. 301-4. Within those fourteen pages, the government put forward its many theories of its case based on its interpretation of the facts, including Mr. Farwell's phones and the searches thereof. The government then audaciously claims that it was the *defense's* obligation to correct the government's mistakes on rebuttal and implies that if the defense did not choose that one droplet from the firehose of the government's inaccuracies to rebut, then *it* failed to inform Magistrate Judge Kelly. *See* D.E. 310, at 5 ("Had that statement been true, it would have been a natural rebuttal to the government's argument that Farwell only consented to a search for what he knew did not exist."). This telling may assuage the government's fear due to its failure to follow the letter of the consent form, but it is not a telling of what occurred at the detention hearing.

Ms. Daley made the opening statements in the April 28 detention hearing, addressing the factors the defense determined were relevant to urge pretrial release for Mr. Farwell. Ms. Riley responded with the government's theory as to why Mr. Farwell should remain detained. Neither party directly rebutted the other but instead made strategic choices as to what would move the Court's determination as to the "weight of the evidence," delineated in 18 U.S.C. §3142(g). Following Ms. Riley's presentation, Ms. Daley strategically addressed those key "weight of the evidence" issues – this was suicide,

not murder – and chose not to rebut every argument the government made. Nor does the defense bear a burden to correct the government's mistakes or preview for it any relevant cross-examination material. For the government to suggest that the defense has a duty to rebut all of the government's arguments in a detention hearing, and that when the defense chose not to address every single argument, the *defense* somehow failed in its duty of candor to the Court is patently false, and frankly, offensive.

As to the government's arguments regarding Mr. Loper's testimony on an artifact from the 2021 iPhone, *see* D.E. 310, at 5 – this is a red herring. Again, the government has had this consent form since at least September 2024, and likely earlier as it was included in a September 2024 discovery dump. The consent form states that Mr. Farwell consented to a search of his phone "related to the death of Sandra Birchmore." The artifact that Mr. Loper seeks to admit falls within that contemplated scope, as it shows Mr. Farwell blocked all communications with Ms. Birchmore after they claim he murdered her on February 1, 2021. That the government did not itself identify this is not the defense's responsibility. What was the responsibility of the defense, though it was done over its objection, was the provision of notice to the government of Mr. Loper's discovery. The defense complied with this request and continues to comply with this Court's orders as to Mr. Loper's disclosures.

For the reasons outlined herein, Mr. Farwell requests that the Court deny each of the requests made by the government in its motion *in limine*.

Dated: October 7, 2026

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys,

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens, NC State Bar # 20156
Joanne M. Daley, BBO # 653375
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
kimberly.stevens@fd.org

**CERTIFICATE OF SERVICE**

I, Kimberly C. Stevens, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on October 7, 2026.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens