UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW FARWELL,<br><br>Defendant | CRIMINAL No. 24-10259-DJC |

**GOVERNMENT'S MOTION *IN LIMINE***
**TO ADMIT "SPECIALLY RELEVANT" EVIDENCE**
**REGARDING THE DEFENDANT'S EXTRAMARITAL AFFAIRS**

The government renews its motion *in limine* to admit testimony regarding defendant Matthew Farwell's adult extramarital affairs. The government previously moved to admit limited testimony proving that the defendant engaged in at least three extramarital affairs during the relevant period. *See* ECF No. 200 (under seal). The crux of the evidence is that Farwell's brazen conduct with these other adult women and his failure to take extensive precautions to hide these relationships was starkly different than how he treated his criminal relationship with Sandra Birchmore. Believing that the defendant did not intend to explain away his suspicious conduct in this case as merely steps taken to prevent his wife from discovering his infidelity, the Court denied the government's original motion. *See* ECF No. 269 (under seal). However, at oral argument, the Court also cautioned that it may revisit the issue if the defendant's evidence or statements to the jury gave the evidence of his adult extramarital affairs some special relevance.

The defendant chose not to heed the Court's warning. Attorney Stevens opened this trial by telling the jury that Farwell's bizarre conduct was merely evidence of an innocent man's desire to hide his infidelity from his wife. Farwell chose that defense. The consequence is the government must disprove it with evidence. And to do that, the government must be able to show

that Farwell did not care about his wife finding out about his affairs. Farwell only cared about—and took steps to prevent—people from discovering his criminal conduct with Sandra Birchmore.

**Legal Standard**

In the First Circuit, courts apply a two-part test to determine whether Rule 404(b) evidence is admissible. *United States v. Hicks*, 575 F.3d 130, 142 (1st Cir. 2009). First, the Court must determine whether the evidence has a special relevance. *Id.* If the evidence "would allow a juror to make at least one inference probative" of a material issue, the evidence meets this prong. *United States v. Nickens*, 955 F.2d 112, 124-125 (1st Cir. 1992) (citations omitted). Second, the Court must determine whether the evidence should be excluded under Federal Rule of Evidence 403, "which allows courts to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *Hicks*, 575 F.3d at 142 (citing Fed. R. Evid. 403).

Evidence that has special relevance is evidence offered not to show a defendant's evil proclivities, but rather to establish some material fact. *United States v. Hadfield*, 918 F.2d 987, 994 (1st Cir. 1990). And a defendant may give otherwise inadmissible evidence special relevance by offering a theory of his case during an opening statement. For example, in *United States v. Landry*, 631 F.3d 597, 601-602 (1st Cir. 2011), the First Circuit held that after the defendant opened on the theories of good faith and computer error in a fraud case, the court properly admitted previously inadmissible evidence that the defendant lied and provided false information during a prior traffic stop because the defendant's theory made the evidence specially relevant.

**Argument**

**I. Precluding evidence of Farwell's extramarital affairs would prevent the government from rebutting Farwell's counsel's statements to the jury.**

The defendant's opening statement made the special relevance of the extramarital affairs crystal clear. First, Attorney Stevens told the jury, "Matthew Farwell is a man who had an affair."

Transcript of Proceedings on October 9, 2026 (Rough) at 28.[1] Second, she explained that the innocent reason why Farwell wore a mask when he visited Ms. Birchmore on Feb. 1 was: "[H]e's wearing a mask, which is what people having affairs might do." *See* Tr. at 40. Third, Attorney Stevens told the jury that they will not find evidence that Farwell intended to prevent a communication to a federal law enforcement officer, adding Farwell's "wife is not a federal law enforcement officer." Tr. at 34.

The government has the burden to prove that the defendant killed Ms. Birchmore and that he did it because she had information about his crimes. *See* 18 U.S.C. § 1512(a)(1)(C). The defendant told the jury that his defense is "[h]e's made regrettable mistakes," but that the things the government claims are evidence that he killed Ms. Birchmore and intended to prevent a communication are merely the hallmarks of a cheating spouse who was concerned about getting caught. *See* Tr. at 28, 34, 40. The government has a right to prove that was not the case. Infidelity may be distasteful, but if fear of detection by Farwell's wife is his explanation for certain evidence, the government must have a chance to rebut this by proving that he did not care about his wife finding out. *See, e.g., Landry*, 631 F.3d at 603 (holding that defendant's defense of "innocent involvement" made admissible evidence to counter it).

Farwell's adult affair partners will offer critical testimony that strikes at the heart of Farwell's disclosed defense and Attorney Stevens's purported innocent explanations for Farwell's mask-wearing. The three affair partner witnesses will say Farwell never took steps to hide their encounters. He never wore a mask or disguise. In fact, he had a cavalier attitude about their encounters. With this evidence, the jury will know that Farwell, an ardent anti-masker, was doing

[1] The records cites are to the rough, unofficial transcript of the proceedings on October 9, 2026. In light of the holiday weekend, the government anticipates receiving the official transcript on or about October 13. At that time, the government will file the official transcript.

something on Feb. 1, that he did not do with his other adult affair partners. Farwell's attempt not to be seen when he went to Ms. Birchmore's apartment proves that he was there to kill Ms. Birchmore, and not merely present as a cheating spouse afraid that his wife may find out.

The defendant's approach to extramarital affairs is not a peripheral issue. Attorney Stevens made it front and center at the beginning of this trial when she told the jury that Farwell was simply a man who "had an affair" and wore a mask because he was a cheating spouse trying not to get caught. Nor does the affair partner evidence prove an attenuated fact from which the jury must make several logical deductions. It's simple. The evidence will prove Farwell never cared about his wife discovering his infidelity, so he wore a mask on Feb. 1 for another reason: not to be seen at the apartment where Ms. Birchmore lay dead. A ruling precluding this evidence would unfairly bar the government from showing the jury the true significance of Farwell's conduct on the night Ms. Birchmore died.

### II. <u>The affair partner evidence's probative value is not substantially outweighed by the danger of unfair prejudice</u>.

Farwell's opening statement gave the affair partner evidence special relevance and made it highly probative. *See* Fed. R. Evid. 401. The danger of unfair prejudice is non-existent. Fed. R. Evid. 403.

The first sentence of Attorney Stevens's opening remarks to the jury were: "Matthew Farwell is a man who had an affair." Tr. at 28. Because his chosen defense is that he had an affair, there is no unfair prejudice in the jury learning more about his three other affairs and how they were different than the criminal relationship he had with Ms. Birchmore that ended with his masked visit to her apartment on the night she died. The defendant and his counsel chose this path. He elected to tell the jury he cheated on his wife. In this context, further evidence of his infidelity

will not shock the jury. In reality, adult infidelity carries far less stigma than it did in the past.[2] Nor will the affair partner evidence, accompanied by an appropriate limiting instruction, lead the jury to conclude that because Farwell is a cheater, he is also a murderer. *See, e.g., Landry*, 631 F.3d at 604 (affirming admission of Rule 404(b) evidence where it involved "no graphic or shocking events that might play upon a jury's passion").[3] However, excluding the affair partner evidence would permit the defendant to tell a story about his use of a disguise on Feb. 1 that is inconsistent with what he did when he participated in affairs with three other women who he did not sexually abuse as children.

**<u>Scope of the Affair Partner Testimony</u>**

The government will offer the three affair partners' testimony on the follow subjects: (1) the existence and duration of their relationship with the defendant, including that the affair partners were all adults at the time of the affairs and they had no indication that the defendant was on the

---

[2] Extramarital affair evidence is not the toxic character evidence the defendant claims it to be. Courts properly admit evidence of defendants' extramarital affairs when it has special relevance. *See, e.g., United States v. Russell*, 971 F.2d 1098, 1106–1107 (4th Cir. 1992) (in murder case, affirming admission of evidence of the defendant's extramarital affairs where it was probative of the defendant's motive and intent); *United States v. Duval*, No. 89-1891, 1990 U.S. App. LEXIS 6728, at *12–15 (6th Cir. Apr. 26, 1990) (in tax case, affirming admission of the defendant's extramarital affair and payments to affair partner to prove defendant's inflated assets) (unpublished); *United States v. Beard*, No. 1:20-CR-00351-SCJ, 2024 U.S. Dist. LEXIS 54542, at *10–13 (N.D. Ga. Mar. 27, 2024) (denying defendant's motion *in limine* to preclude evidence of the defendant's infidelity, including his use of city funds to pay for travel with personal companions, i.e., affair partners); *United States v. Salzano*, No. 22CR690(EP), 2024 U.S. Dist. LEXIS 35677, at *31 (D.N.J. Feb. 26, 2024) (in investment and tax fraud case, denying defendant's motion *in limine* to preclude reference to defendant's "mistress" to whom the defendant gave investors funds); *United States v. Bonner*, No. 12CR3429 WQH, 2014 U.S. Dist. LEXIS 11852, at *3–*6 (C.D. Cal. Jan. 30, 2014) (in fraud case, denying defendant's motion *in limine* to preclude reference to his extramarital affair, holding "the Defendant's marital status and alleged extramarital affair has significant value in proving the Defendant knowingly engaged in the acts charged in the indictment and acted with intent to defraud").

[3] If the jury was inclined to conclude that adulterers are murderers, Farwell's counsel's opening statement already gave the jury the information needed to reach that conclusion. *See* Tr. at 28 (Attorney Stevens stating, "Matthew Farwell is a man who had an affair.").

clock during their encounters; (2) their relationship to the defendant's wife and any attempt Farwell made (or did not make) to conceal the affairs; (3) the fact that the defendant never instructed them to delete messages with him; and (4) the fact that the defendant never wore a mask or disguise during their encounters.

The affair partners' respective relationships with Farwell's wife and whether he ever expressed concern about his wife learning about the affairs is evidence that is necessary to rebut the defendant's purported innocent explanation for his conduct on Feb. 1. At the end of trial, the government will properly argue that the defendant killed Ms. Birchmore to conceal his crimes and not his affairs, as he only tried hard to conceal his relationship with his crime victim and not his adult affair partners.[4]

The government also intends to ask each affair partner witness whether Farwell ever directed them to delete their communications. Farwell's decision not to take this precautionary measure with the three adult affair partners proves that he knew that Ms. Birchmore was different than these exclusively adult sexual partners. It is evidence of Farwell's knowledge of Ms. Birchmore's status as a crime victim (i.e., the victim of his sexual abuse at 15 years of age), and that their text communications regarding underage sex were incriminating and not merely cause for marital acrimony.

---

[4] In addition to trying to explain away the defendant's masked presence at Birchmore's apartment, Attorney Stevens told the jury the evidence would only show that Farwell was motived to prevent disclosure to a non-law enforcement officer, Farwell's wife. Tr. at 34. With that before the jury, the government is now entitled to prove that the defendant would not have been motivated to commit murder solely to conceal the existence of an affair. That is because, among other things, the affair partners will testify that Farwell pursued relationships with them despite each of their own relationships with his wife. And at least one partner will also testify that Farwell engaged in sexual conduct with the partner in close physical proximity to Farwell's wife. When he met with these women, Farwell never took extensive precautions to conceal what he was doing. There is also evidence that the defendant openly discussed these affairs with others.

Finally, the government intends to ask each affair partner witness whether the defendant ever wore a mask or disguise. This evidence will rebut Attorney Steven's claim that the defendant wore a mask to Ms. Birchmore's apartment on the night she died merely because he was scared his wife would find out about an extramarital affair.

**Conclusion**

The government has the burden of proof in this murder trial. With that burden, the government must be able to address with evidence the defendant's purported innocent explanations for his conduct. Now that Attorney Stevens has chosen to tell the jury that Farwell cheated on his wife and wore a mask to prevent her from finding out about it, the government should not be barred from introducing the evidence that directly rebuts those statements. Rule 404(b) and general principles of fairness require the admission of the testimony the government seeks to introduce.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ Brian A. Fogerty
BRIAN A. FOGERTY
ELIZABETH C. RILEY
TOREY B. CUMMINGS
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed under seal will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Brian A. Fogerty
Brian A. Fogerty
Assistant United States Attorney

Date: October 11, 2026