**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Docket No. 1:24-cr-10259-DJC |
| v. | ) | |
| | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION FOR CURATIVE INSTRUCTIONS (DE 339)**

Matthew Farwell, by and through counsel respectfully moves the Court *in limine* to issue an order denying the government's request for curative instructions regarding the defense team's opening statement.

## I. No Curative Instructions Are Necessary Regarding Statements of Law in the Defense's Opening Statements

### A. Statements Regarding the Necessity of a Unanimous Jury

Defense counsel, in her opening statement, told the jury:

> And this trial will take you through a journey of science because, make no mistake, the burden of proof rests right here at this table throughout. The government bears the highest burden known under the law, because the charges are that serious. They must prove to each and every one of you beyond a reasonable doubt that the charges that they levied against Matt in this case, that they've proven them. (Tr., at 32:12-18).

This is a correct statement of law. Indeed, the government takes no issue with it in their motion.

Minutes later, at the end of her opening statement, defense counsel stated:

> At the close of the evidence, we are confident that you will find – and if any one of you finds that the government has not met their burden of proof beyond a reasonable doubt, that you must acquit Matt Farwell. And we are confident that you will return a verdict of not guilty. (Tr., at 40:5-9).

The government made no contemporaneous objection. When viewed in the full context of Ms.

Stevens' opening, she clearly meant to repeat "every one of you," instead of saying "any one of you." This was not an intentional "misstatement."[1] Additionally, the Court instructed the jury on Friday that opening statements are not evidence. Further, it is the province of the Court to instruct the jurors on the law throughout the trial. No additional instruction is required.

**B. Statements Regarding the Government's Burden Under 18 U.S.C. §1512(a)(1)(C)**

The government next alleges that defense counsel "misstated the law and improperly increased the government's burden under 18 U.S.C. § 1512(a)(1)(C)." D.E. 339, at 2. But it is incorrect. Instead, the government's persistent misstatements of its obligation under §1512(a)(1)(C), as documented repeatedly by the defense,[2] required the defense, in its opening, to invoke the doctrine of invited response on a material issue. Indeed, nothing is more material than the burden of proof regarding the primary criminal charge governing this case.

When reviewing the transcript components included in the government's motion, it becomes clear that defense counsel attempted to correct what appeared to be, at best, a suggestion to the jury, and, and at worst, a misstatement of law, by the government that the jury could convict Mr. Farwell if it believed that Ms. Birchmore might tell Mrs. Farwell about their affair. Specifically, Ms. Cummings said:

> You will see that after hearing this news from Josh Heal, Sandra immediately texted the defendant about his wife 's pregnancy. "You have baby number 3 on the way and don't lie about it. And if the answer is yes, **<u>I'm telling [Mrs. Farwell] what you've been doing</u>**. I don't care or you can give me a baby, not my choice, because I know for a fact she is and she's due in February."
>
> Sandra told the defendant **<u>she was going to expose what he had been doing unless he agreed to give her a baby, too</u>**.

[1] Upon reviewing the transcript, counsel realizes that she inadvertently used the "any one of you" phrasing, and she offers her apology to the Court.

[2] *See* D.E. 162, D.E. 100, D.E. 90.

Tr., at 9:16-24 (emphasis added).[3]

Additionally, the statute under which the government chose to prosecute Mr. Farwell requires that it prove two federal nexuses, as its own proposed jury instructions show. *See* D.E. 339, at 4-5. Not once in its opening statement did the government mention *anything* about communications to federal law enforcement, let alone that "the likelihood of communication to a federal officer [is] more than remote, outlandish, or simply hypothetical." *See Fowler v. United States*, 563 U.S. 668, 678 (2011)). As the defense has repeatedly urged, the government must contend with the federal nexuses required to convict Mr. Farwell under § 1512(a)(1)(C). *See* D.E. 162, D.E. 100, D.E. 90. Instead, the government's statements implied that Ms. Birchmore's exposure of the relationship to Mrs. Farwell – who is not a federal law enforcement officer – would be sufficient to satisfy the statute. In fact, would not. As a result, the government invited Ms. Stevens' response on a material issue – the burden of proof the government holds in this case.

To that end, Ms. Stevens stated:

> The government bears the highest burden known under the law, because the charges are that serious. They must prove to each and every one of you beyond a reasonable doubt that the charges that they levied against Matt in this case, that they've proven them. And the first part is whether he killed her -- and he did not -- and we're going to talk about science in a moment from that scene. But the second part of that, if he did so – and he didn't – that it would have been done to prevent a communication of a federal crime to a federal law enforcement officer. And you will hear none. In fact, Ms. Cummings pointed to you the one thing they could point to you in the opening, that she might tell his wife. Make no mistake. His wife is not a federal law enforcement officer. More importantly, Matt Farwell did not kill Sandra Birchmore.

Tr. 32:14-33:6. There is no misstatement of law.

[3] Defense counsel's good faith response to the government's opening statement is further buttressed by texts from same conversation the government referred, which gives surrounding context for the government's excerpt. In those texts, Ms. Birchmore shares with Mr. Heal a draft of the "letter" she planned to send to Mrs. Farwell. *See* Exhibit T1, at 10.

Because the government invited this response to *its* misstatement of law, there does not need to be a curative instruction.

## II. No Curative Instructions or Admonitions Are Necessary Because the Defense Properly Referenced Testimony it Intends to Elicit

The government alleges that the defense referred to "at least six disputed or unnoticed exhibits without prior notice to the Court or the government" in its opening.[4] *See* D.E. 339, at 5. The defense opposes this characterization and takes each in turn.

### A. Suicide-Related Images/Language in Birchmore's Cell Phone

As an initial matter, the Court issued an oral ruling on this issue following opening statements, and the government apparently has filed a motion to reconsider that ruling. The defense urges the Court not to do so for the following reasons.

The images referenced in the opening are stored on Ms. Birchmore's phone in her Instagram cache. The images were not displayed to the jury but instead were described, as they reflect Ms. Birchmore's state of mind hours prior to her death. Indeed, the government did the same. In its opening, the government referenced a disputed exhibit – a cached image on Ms. Birchmore's phone of a children's bookshelf – to bolster the government's claim that she was in high spirits shortly before her death. *See* Tr., pg. 18:19-19 ("She searched for children's furniture and bookshelves.").

Furthermore, the government will have ample opportunity during trial to challenge possible expert testimony with respect to whether these images were or could have been engaged with and/or viewed.

### B. Ms. Birchmore Did Tell a Friend She was "Gushing Blood"

---

[4] The government also noted that it has objected to the admission of 175 of the defense's 248 exhibits – two-thirds of the proposed defense exhibits. D.E. 339, at 5.

The government maintains that it has not found any text from Ms. Birchmore that stated that she was gushing blood. D.E. 339, at 6. Defense counsel never referred to any text message. Counsel stated that Ms. Birchmore "*tells* the friend, 'I was gushing blood.'" Tr. 29:24 (emphasis added). Indeed, Ms. Birchmore did *tell* a friend, "I was gushing blood." The source of this statement by Ms. Birchmore is in a recorded phone call between Ms. Birchmore and a government witness who will testify at this trial.

The recording of Ms. Birchmore's conversation is marked as Defense Exhibit 665/N11; it was attached as an exhibit to the defendant's opposition to the prosecution's 804(b)(6) motion. *See* D.E. 221. The transcript of that call states:

> [Witness]: What I'm trying to say, Sandra, is communicate and be nice. Don't ignore me and then see you at the emergency room and then say this.
>
> MS. BIRCHMORE: I really was. I was at the ER yesterday too because I was gushing blood.

Contrary to the government's assertion, this information clearly exists.

**C. The Statements of Dr. Zoe Sundell are Admissible**

The government alleges that defense counsel described in its opening the notes of FBI agents, which are inadmissible hearsay. *See* Tr. at 33:23-34:1 and 36:22-24. The FBI notes are disputed exhibits R8 and S8, to which government previously objected under Rule 801. However, the government is well aware that the defense has subpoenaed Dr. Zoe Sundell as it has been included on emails regarding Dr. Sundell's testimony.

The notes to which the government refers were taken during its meeting with Dr. Zoe Sundell, Chief Medical Examiner for the Armed Forces. According to the FBI agent's contemporaneous notes, Dr. Sundell did not see any reason to contradict the conclusions of Dr.

Capo-Martinez, the medical examiner who conducted Ms. Birchmore's autopsy. Following this initial consult, the government declined to notice an expert disclosure from Dr. Sundell and opted not to call her as a witness at this trial.

The defense expects that Dr. Sundell will adopt the contemporaneous statements attributed to her in the agent's notes of their interview. Therefore, defense counsel was referencing what testimony will likely be elicited during the defense's case in chief.

**D. Denying Paternity**

The government alleges that the defense incorrectly stated that Mr. Farwell denied paternity. However, in a Massachusetts State Police memorandum, provided to the defense by the government through discovery, a defense witness, who has been noticed to the government, stated to law enforcement that Ms. Birchmore told her Mr. Farwell denied paternity. It is unclear from that statement whether the communications with Ms. Birchmore occurred via text, telephone, or Snapchat. If the communication did occur on Snapchat, then it is possible that the "snap" once existed but is no longer extant, as "snaps" are deleted once read unless they are actively saved. Notwithstanding, the vehicle is irrelevant as the defense intends to elicit through testimony from this witness the details regarding this conversation with Ms. Birchmore.

Consequently, no curative instruction is required because the defense provided the jury with accurate information it intends to elicit through testimony.

**E. Referencing Texts from January 31 and February 1, 2021**

The government alleges that the defense "quoted a series of text messages that Ms. Birchmore allegedly sent in the month prior to her death which are either (a) not included in noticed exhibits or (b) part of disputed exhibits." *See* D.E. 339, at 8, *citing* Tr., 28:19-30:4 and 30:21-31:4.

Again, the government invited a response on a material issue, as it elected to take Mr. Farwell's text messages out of context to serve its narrative as to why he went to Ms. Birchmore's apartment on February 1st. As a result, defense counsel offered the jury the complete context surrounding those same text messages. For example, the government stated the following:

> And during this time, this day on February 1st, she was also texting with the defendant. She told him about an early baby shower present she got in the mail that she was really excited about. She asked him at 7:46 that evening if when they found out if they were having a boy or a girl if he would buy an outfit for the baby to wear home from the hospital. Less than two hours later she would be dead. Between 8 and 9 p.m. in her final hour, Sandra searched for baby shower venues. She searched for children's furniture and bookshelves.[5] She had a 25-minute call with her best friend who will tell you she sounded normal. And at 9:07 p.m., the defendant texted Sandra. He asked her, "Are you still up?" After she said, "Yeah," he asked, "Okay to come by for a second?" She said, "Yeah. You can come say hi. You okay?" Then she told him, "Door's open when you get here."

Tr. 18:9-25.

Defense counsel responded to the government's narrow telling by completing the record for the jury. For example, she stated that on February 1st, Ms. Birchmore engaged with Mr. Farwell, social media, and the internet in the following ways:

> 7:18 a.m., "I couldn't sleep last night. I kept waking up." 7:50 a.m., Sandra Birchmore searches on Safari, "What color is the suicide ribbon?" This is February 1, the day we're talking about. "What color is the suicide ribbon?" 8:18, "Can we talk this morning?" 10:41, "I'm kind of stressed out and freaking out."11:23 a.m., "Can you visit me tomorrow before work tonight?"11:32, nine minutes later, "I'm feeling better." 11:32:56, "And I just am today. It's a struggle. I wish you were with me. Can you visit me when I get out briefly? Can we please talk later tonight when it switches over if I'm awake and not tomorrow? I'm super stressed out today." 5:52 – we saw the snow in the excerpts from the lobby. 5:52, "Please be careful. I fell tonight." Sandra Birchmore says, "I fell tonight." There will be evidence of that. 7:36 p.m., "I'm sorry." 7:47 p.m., she calls up images from the Internet of a young man being grabbed by other people on a bridge, and it says "People holding tightly to a man trying to commit suicide." 7:55 p.m., she pulls up an image, looks at it, "Can I die just for a day? I just want to see who will

[5] As discussed above, the search for furniture and bookshelves was located in Ms. Birchmore's cache and is a disputed exhibit.

> cry when I'm gone." And then the text exchange – 8:19. Excuse me. 9:07 p.m. Matthew Farwell responds to this volley of texts that you just heard me read. "Are you still up?" "Yeah." "Okay to come by for a second?" "Wish you can come over and say hi. You okay? "You asked if I could come over?" Sandra Birchmore smiley face. "Door's open when you get here." **<u>Okay. That's a window into her mental state as this is all happening.</u>**

Tr. 28:8-29:17.

Ms. Stevens did reference a *noticed* demonstrative and exhibit – Defense Exhibit H14 / D748 / D701, which is a timeline compiled of Ms. Birchmore's texts to Mr. Farwell, relevant online searches, and Instagram images found on her phone that *complete* the record the government put forward in its opening statement, as is allowed under Federal Rules of Evidence 106. Everything included in defense counsel's opening has been provided to the government as a potential exhibit, and it all flows from the government's furnished discovery.

**F. Referencing the Kilroy Affidavit**

The government alleges that defense counsel referenced a disputed exhibit (T13), and that the Court barred reference to the affidavit. This is false, and indeed, the Court overruled the government's contemporaneous objection on this very issue, as well as ruling against a curative instruction following opening statements and outside the presence of the jury.

The defense understands itself to be in compliance with this Court's Order in D.E. 271, "permit[ting] testimony from Kilroy about Ms. Birchmore's alleged suicidal statements and threats to him, D. 233 at 1, given their relevance here to the defense, and admissibility under Fed. R. Evid. 803(3) (then existing mental, emotional or physical condition)." The defense is allowed to preview its case in chief in opening statements, and it intends to elicit from Mr. Kilroy the contents of the affidavit within the parameters allowed by the Court. Therefore, the defense appropriately referenced the contents of this exhibit and prays the Court maintains its prior rulings on this issue.

**Conclusion**

Mr. Farwell carries no burden in this trial, but he does have the right to put on a case. He is not obligated to forecast his entire defense for the government in advance of its opening or its case in chief. Furthermore, defense counsel's role is to rebut the government's evidence, and sometimes, as with opening statements, that response is occurring nearly contemporaneously. While the defense abides by the rules and rulings of this Court, it also has an obligation to zealously defend its client, and it intends to do so. The government cannot object simply because the defense is actively defending its client.

Because the government did not object contemporaneously during opening statements, because the defense did not run afoul of this Court's rulings, because any small errors defense counsel may have made during her opening statement are not material, and because this Court already instructed the jury that opening statements are not evidence, the government's motion for a curative instruction and an admonition to the defense should be denied in its entirety.

Dated: October 12, 2026

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys,

*/s/ Joanne M. Daley*

Joanne M. Daley, BBO # 653375
Kimberly C. Stevens, NC State Bar # 20156
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Joanne_daley@fd.org

**CERTIFICATE OF SERVICE**

I, Joanne M. Daley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on October 12, 2026.

*/s/ Joanne M. Daley*
Joanne M. Daley